

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00055-CR

_____

JUAN FLORES-ALONZO, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 2 of Dallas County
Dallas County, Texas
Trial Court No. F-1260857-I

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

# OPINION

In Dallas County,[1] Texas, Juan Flores-Alonzo was charged with continuous sexual abuse of a child, but he waived his right to a jury trial and entered a plea of "no contest" to the lesser-included charge of aggravated sexual assault of a child under fourteen years of age. After hearing testimony and the arguments of counsel, the trial court found Alonzo guilty, sentenced him to fifteen years' confinement, and imposed a $5,000.00 fine. Alonzo's motion for new trial was overruled by operation of law.

On appeal, Alonzo contends that (1) the trial court violated his due process and statutory rights by failing to admonish him that his no-contest plea was legally equivalent to a guilty plea; (2) the trial court violated his due process and statutory rights by finding him guilty without a clearly expressed plea accompanied by a strong factual basis; (3) his counsel rendered ineffective assistance by advising him that he might not be deported as a result of his plea of no contest; (4) he was entitled to a hearing on his motion for new trial; and (5) the judgment should be modified to reflect the correct plea.

We modify the judgment to reflect Alonzo's plea of no contest and affirm the trial court's judgment, as modified, because we find that (1) Alonzo failed to demonstrate that he did not fully understand the consequences of his plea; (2) sufficient evidence supports his plea; (3) the advice provided by Alonzo's trial counsel was within the range of competent assistance; and (4) Alonzo was not entitled to a hearing on his motion for new trial.

---

[1]Originally appealed to the Fifth Court of Appeals in Dallas, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). Because this is a transfer case, we are required to apply the precedent of the Dallas Court of Appeals to the extent it differs from our precedent. *See* TEX. R. APP. P. 41.3.

**I.    Did the Trial Court Err By Accepting Alonzo's Guilty Plea Without Properly Admonishing Him?**

In his first point of error, Alonzo contends that his plea was involuntary because the trial court accepted it without admonishing him that a no-contest plea is generally the legal equivalent of a guilty plea.

A plea of nolo contendere or no contest has the same legal effect as a plea of guilty except that such plea may not be used as an admission in any civil suit. TEX. CODE CRIM. PROC. ANN. art. 27.02(5) (West 2006). Yet, a trial court is not required to admonish the defendant that a plea of no contest has the same legal effect as a plea of guilty. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13 (West Supp. 2014) (identifying admonishments that must be given to defendants pleading nolo contendere). When, as here, the record indicates that the trial court properly admonished a defendant, a prima facie showing exists that the defendant entered a knowing and voluntary plea. *See Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998) (per curiam). Although a defendant may still raise the claim that his plea was involuntary, he bears the burden of "demonstrat[ing] that he did not fully understand the consequences of his plea such that he suffered harm." *Id*. (citing *Ex parte Gibauitch*, 688 S.W.2d 868 (Tex. Crim. App. 1985)).

Prior to entering his plea, the trial court explained to Alonzo that he was charged with continuous sexual abuse of a child and that the applicable punishment range was twenty-five years to life in prison without the possibility of parole. However, in exchange for Alonzo's agreement to waive his right to a jury trial and enter a plea of no contest, the State agreed to reduce the charge to aggravated sexual assault of a child under fourteen years of age, which has a

punishment range of five to ninety-nine years or life in prison. The trial court informed Alonzo that by virtue of this agreement, he would become eligible for parole after serving half of his sentence.

The trial court further explained to Alonzo that:

> [p]art of the agreement also is you will waive your right to a jury trial and the evidence will be presented to me. I will hear the evidence from the State, I'll hear evidence from you and then I'll make a decision.
> If the State cannot prove their case beyond a reasonable doubt then I will find you not guilty. If the State does prove your guilt beyond a reasonable doubt then I could either defer a finding of guilt and place you on probation for up to 10 years or I could find you guilty and sentence you to prison anywhere within that five to 99 year or life range.

The trial court also reminded Alonzo that there was no agreement regarding "what will happen at the end of the trial." Alonzo said he understood the terms of the agreement, and he entered a plea of no contest. After Alonzo entered his plea, the court stated that it would "proceed on the plea of No Contest." The court continued, "There is no admission of guilt. The State has the full burden of proof beyond a reasonable doubt."[2]

On direct examination of Alonzo by his trial counsel, the following exchange occurred:

> Q    Mr. Flores[-]Alonzo, you've been listening to Judge Stephens, correct?
>
> A    Yes.
>
> Q    And you understand everything that he's explained to you, thus far, this morning?

---

[2]When a defendant enters a guilty or no-contest plea, "[t]he State . . . is not required to prove the defendant's guilt beyond a reasonable doubt; the supporting evidence must simply embrace every essential element of the charged offense." *Staggs v. State*, 314 S.W.3d 155, 159 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Thus, although it does not bind the State to a higher burden of proof on appeal, the trial court essentially required the State to present more evidence than was legally required to satisfy it that Alonzo was, in fact, guilty.

4

A    Yes, sir.

Q    And the things that he's explained to you are the things that you and I discussed at length this morning and also yesterday; is that right?

A    Yes.

Q    It wasn't until yesterday morning that the district attorney assigned to this case actually made this offer to allow you to plead No Contest to the lesser included offense and come to Judge Stephens to see what the result will be, correct?

A    Yes, sir.

Q    And I've made you no guarantees or promises as to the outcome of what will happen by pursuing the case in this manner; is that right?

A    Yes, sir.

Q    I've explained to you the advantages and disadvantages of coming in front of Judge Stephens. I've also explained the advantages and disadvantages of going to trial on the original charge of Continuous Sexual Abuse; is that right?

A    Yes, sir.

Q    And ultimately it's my understanding that this is your free and voluntary decision to handle the case in this way; is that right?

A    Yes, sir.

Q    I did not pressure you, force you, threaten you or coerce you to handle the case in this manner, did I?

A    Yes, sir.

Q    I did force you?

A    No, sir.  No.

Q    Okay. I did not force you, correct?  I did not threaten you; is that correct?

5

A       No, sir.

Q       I did not promise you anything?

A       No, sir.

Based on the record, Alonzo failed to demonstrate that he did not fully understand the consequences of his plea. *See Martinez*, 981 S.W.2d at 197. Accordingly, we overrule this point of error.

## II.     Does Sufficient Evidence Support Alonzo's Plea?

In his second point of error, Alonzo argues that the trial court erred in accepting his plea because it was not supported by a strong factual basis.

"When a defendant waives his right to a jury trial and enters a no contest plea on a non-capital offense, the proceeding is no longer bifurcated with separate guilt-innocence and punishment phases." *Rohr v. State*, No. 08-12-00219-CR, 2014 WL 4438828, at *1 (Tex. App.—El Paso Sept. 10, 2014, no pet.) (citing *Gomez v. State*, 399 S.W.3d 604, 606 (Tex. App.—Dallas 2013, pet. ref'd)); *Saldana v. State*, 150 S.W.3d 486, 489 (Tex. App.—Austin 2004, no pet.). "The evidence is admitted at the unitary proceeding both to substantiate the defendant's plea and to allow the trial court to determine an appropriate sentence." *Rohr*, 2014 WL 4438828, at *1.

"The entry of a valid guilty plea has the effect of admitting all material facts alleged in the formal criminal charge." *Id.* (citing *Ex parte Williams*, 703 S.W.2d 674, 682 (Tex. Crim. App. 1986); *McGill v. State*, 200 S.W.3d 325, 330 (Tex. App.—Dallas 2006, no pet.)). "With

one exception not applicable here, a plea of *nolo contendere* or 'no contest' has the same legal effect as a guilty plea." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 27.02(5) (West 2006)).

Nevertheless, Article 1.15 of the Texas Code of Criminal Procedure permits the court to render a conviction only after the admission of sufficient evidence establishing a defendant's guilt, even if he has entered a plea of guilty or no contest. TEX. CODE CRIM. PROC. ANN. art. 1.15 (West 2005); *Menefee v. State*, 287 S.W.3d 9, 13 (Tex. Crim. App. 2009). However, "[when a defendant waives his right to a jury trial and enters a plea of guilty or no contest, the State is not required to prove the defendant's guilt beyond a reasonable doubt." *Rohr*, 2014 WL 4438828, at *2 (citing *McGill*, 200 S.W.3d at 330); *see Ex parte Martin*, 747 S.W.2d 789, 792–93 (Tex. Crim. App. 1988) (op. on reh'g). Rather, "Article 1.15 only requires substantiation of the plea." *Rohr*, 2014 WL 4438828, at *2 (citing *Menefee*, 287 S.W.3d at 14). "'By its plain terms it requires evidence in addition to, and independent of, the plea itself to establish the defendant's guilt.'" *Id.* (quoting *Menefee*, 287 S.W.3d at 18).

We are, therefore, required to determine "whether the evidence embraces each essential element of the offense charged." *Id.*; *see Menefee*, 287 S.W.3d at 13; *Stone v. State*, 919 S.W.2d 424, 427 (Tex. Crim. App. 1996); *McGill*, 200 S.W.3d at 331. "If the State fails to introduce sufficient evidence under Article 1.15's standard, the trial court is not authorized to convict." *Rohr*, 2014 WL 4438828, at *2 (citing *Menefee*, 287 S.W.3d at 14). "A conviction rendered without sufficient evidence to support the no contest or guilty plea constitutes non-constitutional trial error." *Id.*

The amended indictment alleged that Alonzo intentionally or knowingly committed aggravated sexual assault of J.F., a child under the age of fourteen, by causing his mouth to contact J.F.'s sexual organ. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii), (a)(2)(B) (West Supp. 2014). J.F. testified that when she was nine or ten years old, she and her family moved to a house on Mountain Lake Street, in Dallas County, Texas, where they lived for three years. She testified that Alonzo touched her in a sexual manner on several occasions. Once, while J.F. and Alonzo were in his room, Alonzo touched her chest, pulled down her shorts, put her hand on his penis, and placed his penis between her buttocks. Several times, Alonzo touched the surface of her vagina with his hands.

The incident in question happened one night after J.F. had fallen asleep. J.F. testified that she awoke when someone entered her room, turned on the light, got onto her bed, pulled her shorts and underwear down, spread her legs, and put his tongue "in between" her vagina. According to J.F., she kept her eyes closed the entire time, but J.F.'s sister and Alonzo were the only other people home, and she believed it was Alonzo because she did not think "anyone else would do that." J.F. recalled that this incident occurred while they lived on Mountain Lake Street. Thus, when the charged offense occurred, she was between nine and thirteen years old. The trial court noted that JF "wasn't the best witness" and, by her own admission, J.F. lies, but the court found her testimony credible because there was "no evidence . . . that she has ever lied to get somebody in trouble." Based on her testimony, he found sufficient evidence to prove Alonzo guilty of the offense to which he pled no contest.

8

Here, there is evidence that Alonzo contacted J.F.'s vagina with his mouth at a time when J.F. was under the age of fourteen. The manner in which the act occurred is strong circumstantial evidence that it was done knowingly and/or intentionally. The evidence introduced by the State is sufficient under Article 1.15 to support the trial court's finding of guilty because it substantiates or embraces each essential element of the offense for which Alonzo was being tried.[3] *See Menefee*, 287 S.W.3d at 13–14. Therefore, we overrule this point of error.

## III. Did Alonzo's Trial Counsel Render Ineffective Assistance?

In his third point of error, Alonzo contends that his trial counsel provided ineffective assistance when he advised Alonzo that he might not be deported if he entered a plea of no contest.

*Strickland v. Washington*, 466 U.S. 668 (1984), established the standard of review applicable to ineffective assistance of counsel claims. To prevail on such a claim, an appellant must prove by a preponderance of the evidence (1) that his counsel's representation fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 689; *Rosales v. State*, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999). *Strickland's* two-pronged test applies to plea agreements. *See Hill v. Lockhart*, 474 U.S.

---

[3]Citing *Holland v. State*, 761 S.W.2d 307, 322 (Tex. Crim. App. 1988), Alonzo contends that, "a strong factual basis is absent when an issue about innocence may be reasonably and fairly raised." However, the cited portion of *Holland* does not relate to the presence or absence of a strong factual basis, but rather states that a trial court must sua sponte withdraw a defendant's guilty plea only when the evidence adduced, if believed, negated the defendant's guilt as a matter of law. *Holland*, 761 S.W.2d at 322 (citing *Fairfield v. State*, 610 S.W.2d 771, 778 (Tex. Crim. App. 1981)). Here, Alonzo argues that in the presentence investigation report (PSI), he "strongly disagree[d] with the allegations," but that did not occur until after he heard all the evidence, his plea was accepted, and he was found guilty. The evidence Alonzo points to in support of his argument relates to the credibility of the witnesses and the strength of the State's case. Because the record fails to raise evidence that, if believed, would negate Alonzo's guilt, *Holland* is inapplicable, and the trial court did not err by failing to reject Alonzo's guilty plea.

52, 58 (1985); *Ex parte Pool*, 738 S.W.2d 285, 286 (Tex. Crim. App. 1987). The voluntariness of a plea agreement depends (1) on whether counsel's advice was within the range of competent representation demanded of attorneys in criminal cases and, if not, (2) on whether there is a reasonable probability that, but for counsel's errors, appellant would not have entered his plea and would have insisted on going to trial. *Hill*, 474 U.S. at 59; *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997), *overruled in part on other grounds by Taylor v. State*, 109 S.W.3d 443 (Tex. Crim. App. 2003).

In *Padilla v. Kentucky*, 559 U.S. 356, 360–74 (2010), the United States Supreme Court held that "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel" and that "counsel must inform her client whether his plea carries a risk of deportation." The Court noted that "informed consideration of possible deportation can only benefit both the State and noncitizen defendants during the plea-bargaining process." *Id*. at 373. The Court held that Padilla's counsel, who explicitly told Padilla that he would not have to worry about immigration consequences prior to entry of his guilty plea, rendered constitutionally ineffective assistance. The Court then remanded the case to give Padilla the opportunity to demonstrate prejudice under *Strickland*; that is, whether a reasonable probability existed that, but for counsel's deficient advice, the result of the proceeding would have been different. *See id*. at 374.

In this case, Alonzo argues that he received ineffective assistance of counsel pursuant to *Padilla* because his trial counsel's "advice was inadequate concerning mandatory deportation." *Padilla* is applicable here because the United States Code provides that any resident or

temporary alien within the United States that is convicted of an aggravated felony, such as sexual abuse of a minor, "shall, upon the order of the Attorney General, be removed." 8 U.S.C. § 1101(a)(43)(A) (2014); *see* U.S.C. § 1227(a)(2)(A) (2008). The record, however, does not reflect that Alonzo was unaware of the potential immigration consequences that he faced should he be convicted on his plea of no contest; in fact, it reveals that his counsel and the trial court expressly discussed the matter with him.

Alonzo testified that he was born in Mexico and that he had a green card that was valid until 2016 or 2017. On direct examination, Alonzo's trial counsel questioned him regarding his knowledge of the possible immigration consequences of pleading no contest:

> Q     Before we proceeded with this plea before Judge Stephens I explained to you the potential immigration consequences in this case, did I not?
>
> A     Yes, sir.
>
> Q     That if you're found not guilty, obviously, you won't have any consequences, there will be no punishment and there shouldn't be any immigration consequences, correct?
>
> A     Yes, sir.
>
> Q     However, I explained to you that if the Judge places you on probation for this offense or if he sentences you to time in the penitentiary that in all likelihood your green card would be revoked, possibly immediately?
>
> A     Yes, sir.
>
> Q     And knowing that, that these immigration consequences exist, it's my understanding that you still want to continue with this plea of No Contest before Judge Stephens and handle your case this way, right?
>
> A     Yes, sir.

11

The trial court also admonished Alonzo that he would "in all probability" be deported if his no-contest plea resulted in a conviction or community supervision. Alonzo repeatedly indicated that he understood the warnings of his counsel and the trial court and that he wished to proceed with his plea of no contest.

Despite failing to use the word "mandatory," as urged by Alonzo on appeal, the language used by his trial counsel and the trial court informed Alonzo that he faced almost certain deportation if convicted. Therefore, Alonzo failed to prove, by a preponderance of the evidence, that his counsel's advice was outside the range of competent representation demanded of attorneys in criminal cases.

Yet, even if the admonishments by Alonzo's trial counsel were deficient, Alonzo still failed to demonstrate that any such deficient performance prejudiced his plea decision. In cases examining ineffective assistance claims arising out of guilty or no contest plea agreements, courts have reviewed four factors to determine whether a defendant was prejudiced by his counsel's actions: "(1) whether there is evidence of the applicant's guilt, (2) whether the applicant had any factual or legal defenses, (3) whether immigration status was his primary concern, and (4) how the plea deal compared to the penalties risked at trial." *Ex parte Obi*, 446 S.W.3d 590, 597 (Tex. App.—Houston [1st Dist.] 2014, no pet.). With respect to the fourth factor, the appellate court "consider[s] the circumstances of the plea deal compared to the penalties the applicant risked by going to trial" and reviews three additional factors: "(1) evidence concerning the likelihood of success at trial, (2) evidence presented by the applicant that some other plea deal would have helped him avoid negative immigration

12

consequences, and (3) evidence presented by the applicant regarding the likelihood of obtaining probation if convicted at trial." *Id.* at 599.

### A.    Evidence of Guilt

In the present case, as discussed in our analysis of the previous point of error, the State introduced sufficient evidence for the trial court to find Alonzo guilty. This factor weighs against a finding of prejudice.

### B.    Factual or Legal Defenses

Alonzo's counsel believes that the State would have had difficulty proving beyond a reasonable doubt the original charge of continuous sexual abuse because the evidence of multiple sexual acts was dependent upon the testimony of J.F., her mother, and therapist. The trial court recognized that J.F. had lied in the past and noted that she "wasn't the best witness." In a family law proceeding, J.F.'s mother denied that any abuse had occurred. J.F.'s therapist was given immunity in exchange for her testimony because she failed to report J.F.'s allegations of abuse. Attacking the witnesses' credibility would have been Alonzo's primary defensive strategy had the case proceeded to trial on guilt or innocence. This factor weighs in favor of a finding of prejudice.

### C.    Immigration Status of Primary Concern

Alonzo submitted an affidavit to the trial court in support of his motion for new trial. Alonzo's affidavit makes no mention of his immigration status. "'[F]ailure to express concerns about immigration consequences after receiving repeated warnings'" weighs against a finding of

13

prejudice.  *Id.* at 598 (quoting *Ex parte Murillo*, 389 S.W.3d 922, 930 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

### D. Plea Deal Compared to Penalties Risked at Trial

Alonzo was originally charged with continuous sexual abuse, a first degree felony, with a punishment range of twenty-five to ninety-nine years confinement, or life, and no possibility of parole.  *See* TEX. PENAL CODE ANN. § 21.02(h) (West Supp. 2014); *see also* TEX. GOV'T CODE ANN. § 508.145(a) (West Supp. 2014).  By waiving a jury trial and entering a plea of no contest to the lesser charge of aggravated sexual assault of a child, the applicable punishment range was reduced to five to ninety-nine years, or life in prison.  By virtue of the plea agreement, Alonzo became eligible for deferred adjudication community supervision and became eligible for parole after serving only one-half of his sentence.  *See* TEX. PENAL CODE ANN. § 12.32 (West 2011), § 22.021(e) (West Supp. 2014).  Further, Alonzo faced deportation regardless of whether he received deferred adjudication community supervision under the plea agreement charge or was convicted at trial of the original charge; therefore, he cannot show that he was prejudiced by failing to receive the *Padilla* admonitions.[4]  *See Obi*, 446 S.W.3d at 600; *Enyong v. State*, 369 S.W.3d 593, 600–02 (Tex. App.—Houston [1st Dist.] 2012, pet. granted) (concluding that deportation consequence was "truly clear" for conviction of misdemeanor assault of family member), *vacated on other grounds*, 397 S.W.3d 208 (Tex. Crim. App. 2013). This factor weighs against a finding of prejudice.

---

[4]There is no evidence that some other plea deal would have helped him avoid negative immigration consequences.

14

In this case, the evidence supports the conclusion that Alonzo's primary concern was avoiding the possibility of having to serve a long, mandatory jail sentence without the possibility of parole. The plea deal allowed Alonzo to avoid that possibility, to receive a much lighter sentence or deferred adjudication, and to be eligible for parole after serving one-half of any prison sentence he received. Alonzo faced presumptively mandatory deportation either way. *See Enyong*, 369 S.W.3d at 600–02. Therefore, we conclude that even if the immigration admonishments of Alonzo's trial counsel were deficient, the factors discussed above weigh against a finding that Alonzo was prejudiced in any way by counsel's performance.

## IV.    Was Alonzo Entitled to a Hearing on his Motion for New Trial?

In his fourth point of error, Alonzo argues that the trial court erred by denying him a hearing on his amended motion for new trial. Specifically, he contends that he was entitled to a hearing "to develop his claim that he would have gone to trial before a jury but for trial counsel providing insufficient information about the nature of the proceedings and the strength of the defense."

"The purposes of a new trial hearing are (1) to determine whether the case should be retried or (2) to complete the record for presenting issues on appeal." *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009). Such a hearing is not an absolute right. *Id.* A hearing on a motion for new trial is mandatory only when: (1) it is requested; (2) the matters raised in the motion and accompanying affidavit are not determinable from the record; and (3) the motion

and affidavit[5] establish reasonable grounds showing that the defendant could potentially be entitled to relief. *Id.* (citing *Smith*, 286 S.W.3d at 339; *Martinez v. State*, 74 S.W.3d 19, 21–22 (Tex. Crim. App. 2002); *Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 2002); *Edwards v. State*, 37 S.W.3d 511 (Tex. App.—Texarkana 2001, pet. ref'd)). Even if the defendant meets the requirements for obtaining a hearing, however, the trial court is not required to allow live testimony at the hearing. *Holden v. State*, 201 S.W.3d 761, 764 (Tex. Crim. App. 2006). Instead, that decision lies within the discretion of the trial court. *See id.* (holding trial court did not abuse its discretion by ruling based only on affidavits).

We review a trial court's denial of a hearing on a motion for new trial under an abuse of discretion standard and reverse only if the decision was so clearly wrong as to lie outside the zone within which reasonable persons might disagree. *Gonzales v. State*, 304 S.W.3d 838, 842 (Tex. Crim. App. 2010); *Smith*, 286 S.W.3d at 339. Absent such an abuse of discretion, an appellate court is not justified in reversing the trial court's judgment. *Gonzales*, 304 S.W.3d at 842; *Smith*, 286 S.W.3d at 339.

> Appellate review of the denial of a motion for new trial hearing
>
> is limited to the trial judge's determination of whether the defendant has raised grounds that are both undeterminable from the record and reasonable, meaning they could entitle the defendant to relief. This is because the trial judge's discretion extends only to deciding whether these two requirements are satisfied. If the trial judge finds that the defendant has met the criteria, he has no discretion to withhold a hearing. In fact, under such circumstances the trial judge abuses his discretion in failing to hold a hearing.

---

[5]The affidavit need not make a prima facie case or establish every legal element required for relief. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). "But, affidavits that are conclusory in nature and unsupported by facts do not provide the requisite notice of the basis for the relief claimed; thus, no hearing is required." *Id.*

*Smith*, 286 S.W.3d at 340.

In his amended motion for new trial, Alonzo argued that his counsel was ineffective because he failed to  (a) adequately counsel Alonzo regarding the nature and ramifications of his no contest plea, waiver of a jury trial, and the plea agreement with the State and (b) adequately investigate the case so as to advise Alonzo of the weaknesses in the State's case.  To establish entitlement to a hearing on his motion for new trial alleging ineffective assistance of counsel, Alonzo must have alleged sufficient facts from which a trial court could reasonably conclude both that counsel's alleged acts or omissions were not within the range of competence demanded of attorneys in criminal cases and that there was a reasonable probability that, but for counsel's errors, appellant would not have entered his plea and would have insisted on going to trial.  *Hill*, 474 U.S. at 59; *Ex parte Moody*, 991 S.W.2d 856, 857–58 (Tex. Crim. App. 1999); *Kober v. State*, 988 S.W.2d 230, 232 (Tex. Crim. App. 1999);  *Morrow*, 952 S.W.2d at 536; *Rodriguez v. State*, 899 S.W.2d 658, 666 (Tex. Crim. App. 1995).

Alonzo's affidavit states,

I was originally charged with continuous sexual abuse.  At the time of the December proceedings, the charge was reduced to aggravated sexual assault.  I do not know the reason that the State reduced the charge.  I do not know if it was because I agreed to give up my right to have a jury decide my case.

I did not have enough information about the law or about the facts in deciding to give up my right to have a jury decide my case.  I would not have pleaded no contest and would not have given up my right to have a jury trial if I had adequate information.

I did not know that there was information available showing that Irene Meza told a divorce or child custody court after the alleged offense that I did not commit any abuse.  I did not know that the school therapist failed to report the alleged offense and had to be given a promise of freedom from prosecution in order to testify.  I

did not know that my daughter would say that I touched her sexual organ with my mouth only once. I do not believe that a jury would have convicted me of continuous sexual abuse or aggravated sexual assault of a child, since both charges require proof that I touched my daughter's organ with my mouth.

I did not understand that pleading "no contest" was legally the same as pleading guilty; I thought that "no contest" meant "not guilty," and I never would have said that I was guilty. I did not know whether the State was lowering the charges from continuous sexual abuse to aggravated sexual assault because I said "no contest" instead of "not guilty." I did not fully understand the different possibilities for punishment in continuous sexual abuse, aggravated sexual assault, or any lower offense. I was not informed about the different possibilities for probation or parole eligibility.

An affidavit by Alonzo's trial counsel was also attached to the motion for new trial. The affidavit consists of three and one-half single-spaced pages in which counsel addresses, in detail, each of Alonzo's specific complaints regarding his representation. Counsel found Alonzo to be well-spoken, he indicated that they communicated well, and counsel believed that pleading no contest was beneficial to Alonzo. He provided Alonzo with the relevant information and guidance, and he believed that in waiving his rights and entering his plea, Alonzo acted knowingly, intelligently, and voluntarily.

Counsel's affidavit states his belief that Alonzo understood that if he was convicted of the original charge, he faced a minimum sentence of twenty-five years' confinement without the possibility of parole. Counsel further opines that Alonzo understood that if he accepted the State's plea agreement, he could be found not guilty and that he would be eligible for parole if found guilty of the lesser charge. According to counsel, the plea agreement was "his only chance

18

for [deferred adjudication] community supervision."[6] The nature of the plea, the proceeding, and the potential punishment ranges were also discussed during the trial, and Alonzo said he understood.

Counsel admitted that Alonzo did not consider the court records regarding his divorce from J.F.'s mother in making his decision because counsel was unaware that a divorce decree existed until after the first two days of the trial.[7] After the court allowed the defense to reopen its case, counsel used the divorce decree, rather than a transcript, to question J.F.'s mother about her denials of any abuse during the family court proceeding. Considering the numerous other grounds upon which to attack her credibility, counsel did not "believe that this was that strong of a defensive point."

As "the sole fact-finder and judge" of the credibility and weight of each piece of evidence, whether presented "during live testimony" or "in affidavits," the trial court is "within its right to disbelieve" any of the "assertions upon which [the] appellant's claims of ineffective assistance of counsel are based," so long as the basis for that disbelief is supported by at least one "reasonable view of the record." *Riley v. State*, 378 S.W.3d 453, 459 (Tex. Crim. App. 2012) (holding trial court had broad discretion to disbelieve defendant's claim he would not have pled guilty but for counsel's error); *Charles v. State*, 146 S.W.3d 204, 208, 212 (Tex. Crim. App. 2004). This is true even in the absence of controverting evidence, affidavit or otherwise.

---

[6]After having seen the evidence, he would have rather urged Alonzo to plead not guilty to the original charge because the credibility of the State's three primary witnesses, J.F., J.F.'s mother, and a therapist, "was suspect."

[7]Alonzo told counsel that he was never legally married to the woman, but he failed to inform counsel that he had been in a Dallas district court in a divorce proceeding. Alonzo remembered his "'wife' had tried to give him some sort of papers, but he wasn't sure where they were."

*Charles*, 146 S.W.3d at 210. Because claims of ineffective assistance of counsel involve mixed questions of law and fact that often "contain[ ] 'subsidiary questions of historical fact, some of which may turn upon the credibility and demeanor of witnesses,'" an appellate court should review the trial court's rulings on the matter "for an abuse of discretion, reversing only if the trial judge's ruling was clearly erroneous and arbitrary[,]" such as when "no reasonable view of the record could support the trial court's ruling." *Riley*, 378 S.W.3d at 457–58 (quoting *Kober v. State*, 988 S.W.2d 230, 233 (Tex. Crim. App. 1999)).

In his affidavit and motion, Alonzo contended that, but for counsel's errors, he would not have pled no contest and would have insisted on going to trial. Having heard the testimony, issues, and arguments at trial and being the sole judge of the weight, credibility, and demeanor of Alonzo and his counsel, the court could have reasonably found Alonzo's contention to be improbable because there is strong evidence from the proceedings that Alonzo's primary concern was avoiding the mandatory twenty-five-year prison sentence that accompanies a conviction for continuous sexual abuse of a child. *See id.* at 459. While Alonzo arguably satisfies the first prong of *Strickland*, based upon the testimony and affidavits, the trial court could have reasonably determined that Alonzo failed to satisfy the second prong by failing to prove a reasonable probability that counsel's errors prejudiced his plea decision. *See Strickland*, 466 U.S. at 689; *Hill*, 474 U.S. at 59. Accordingly, the trial court could have reasonably concluded that the affidavits failed to "establish reasonable grounds showing the defendant could potentially be entitled to relief." *Hobbs*, 298 S.W.3d at 199. Because one reasonable view of the record supports the trial court's decision, the trial court was within its broad discretion to deny

20

Alonzo a hearing. Accordingly, we overrule this point of error. *See Riley*, 378 S.W.3d at 459; *see also Hill*, 474 U.S. at 59; *Moody*, 991 S.W.2d at 857–58; *Kober*, 988 S.W.2d at 232.

**V.      Modification of the Judgment to Reflect Alonzo's Plea**

In his fifth and final point of error, Alonzo contends that the judgment should be modified to reflect his plea of "no contest." We agree.

We have the authority to modify a judgment to make the record speak the truth when the matter has been called to our attention by any source. *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). Our authority to modify incorrect judgments neither depends on the request of any party nor turns on a question of whether a party has or has not objected in the trial court; we may act sua sponte and may have a duty to do so. *Asberry v. State*, 813 S.W.2d 526, 531 (Tex. App.—Dallas 1991, pet. ref'd); *see French*, 830 S.W.2d at 609. Rule 43.2 of the Texas Rules of Appellate Procedure also provides direct authority for this Court to modify a trial court's judgment. TEX. R. APP. P. 43.2.

Here, the judgment incorrectly indicates that Alonzo pled "not guilty" to the alleged offense. The record clearly establishes that Alonzo pled no contest. Accordingly, we modify the judgment to reflect Alonzo's plea of no contest to the offense of aggravated sexual assault of a child.

21

As modified, we affirm the trial court's judgment.


Ralph K. Burgess
Justice

Date Submitted:     January 9, 2015
Date Decided:       March 13, 2015

Publish