In The
 Court of Appeals
 Sixth Appellate District of Texas at Texarkana
 
 
--------------------------------------------------------------------------------
No. 06-17-00203-CR
 
 
 MARQUIS JAMAL REED, Appellant
 
 V.
 
 THE STATE OF TEXAS, Appellee
 
 
--------------------------------------------------------------------------------
On Appeal from the 354th District Court
--------------------------------------------------------------------------------
Hunt County, Texas
--------------------------------------------------------------------------------
Trial Court No. 31,323
 
 
 
 Before Morriss, C.J., Moseley and Burgess, JJ.
 Memorandum Opinion by Chief Justice Morriss
 
 
 MEMORANDUM OPINION
 
A Hunt County jury found Marquis Jamal Reed guilty of burglary of a habitation. See Tex. Penal Code Ann. § 30.02(a)(3) (West Supp. 2017). In accordance with the jury's assessment, Reed was sentenced to twenty years' imprisonment. On appeal, Reed argues that the evidence is legally insufficient to sustain his conviction, that the trial court erred in excluding evidence of drug activity in the victim's home, and that the trial court erred in failing to hold a hearing on his motion for new trial. 
 We conclude that (1) the jury's verdict of guilt is supported by legally sufficient evidence, (2) Reed did not preserve his second point of error, and (3) the trial court did not abuse its discretion in declining to hold a hearing on Reed's motion for new trial. Consequently, we affirm the trial court's judgment. 
(1) The Jury's Verdict of Guilt Is Supported by Legally Sufficient Evidence
In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. Brooks v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)); Hartsfield v. State, 305 S.W.3d 859, 863 (Tex. App. -- Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of the Brooks opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 318 - 19); Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).
Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." Id. 
Here, the State alleged that Reed intentionally or knowingly entered a habitation without the effective consent of the owner, Margarito Vargas, and attempted to commit or committed the felony offense of aggravated assault. After hearing the evidence, the jury convicted Reed of the lesser-included offense of burglary of Vargas' habitation with the attempted commission or commission of assault. Under Section 30.02(a)(3), "[a] person commits an offense if, without the effective consent of the owner, the person . . . enters a building or habitation and commits or attempts to commit a felony, theft, or an assault." Tex. Penal Code Ann. § 30.02(a)(3). Thus, under the hypothetically correct jury charge, the State was required to prove, beyond a reasonable doubt, that (1) Reed (2) entered a habitation belonging to Vargas (3) without Vargas' consent and (4) committed or attempted to commit an assault. 
 Vargas and his ex-wife, Tiffany Vargas, owned several properties which they collectively leased, each taking turns to gather monthly rent payments from their lessees. The Vargases testified that one of those properties was rented to Reed and occupied by him, Isaiah Alex, and their girlfriends. Tiffany said that the occupants of Reed's home were short on their monthly rental obligation on several occasions. As a result, Tiffany accepted a lesser payment in May 2016, but notified Reed and the other occupants of the home that she was evicting them and that they needed to move out by June. According to Tiffany, on receiving news of the impending eviction, Reed's girlfriend, Stephanie Lacy, sent threatening text messages, claimed that Tiffany had stolen the money they had paid for the May rent, and said she would call the police if the money was not returned. Tiffany also testified that Reed called her and demanded that Vargas return the money. Tiffany initiated formal eviction proceedings, and a trial setting was allotted for May 24, 2016, in front of a local justice of the peace. 
Before the trial setting, on May 13, 2016, Vargas was brutally assaulted in his home. Vargas testified that he awoke from sleep to the sound of a door being kicked in. He was badly beaten as he was rising from bed and sustained several facial fractures and lacerations requiring medical treatment. Although Vargas could not see who had assaulted him as a result of the beating, he testified that he heard and recognized the distinct voices of two men and that those voices belonged to Reed and Alex. 
Vargas lived with Christopher Stone and Kaitlynn Justice, who were both at the home during Vargas' beating. Stone and Justice both testified that Lacy and Alex's girlfriend, Kim Rhoden, came to Vargas' home, upset and screaming. Stone testified that he opened the door to Lacy and Rhoden, who demanded to speak to Vargas, opined that they were there to discuss their rental agreement, and shut and locked the front door after informing Lacy and Rhoden that Vargas was sleeping. Justice, who was sitting on the porch, testified that Rhoden and Lacy were angrily screaming, but eventually drove away. 
Yet, Justice testified that Alex and Reed appeared at the house soon after Lacy and Rhoden had left. According to Justice, Reed was "screaming pretty vigorously, saying come on bitch, let's go," and yelling Vargas' name. Justice said she saw Reed kick in the front door and enter the house. Stone testified that he heard loud banging and voices belonging to Reed and Alex. Justice said she heard the sounds of someone being beaten, that Alex entered Vargas' room after the commotion started, and that Reed was the only person in Vargas' room when she heard the sounds of the assault. Stone also heard Vargas being beaten. Stone soon witnessed Reed and Alex running out of Vargas' room, and Justice also saw both of them emerge from the house and drive away. 
 Stone and Justice rushed to Vargas' aid. Stone testified that Vargas was "a bloody mess," and Justice said Vargas' "entire face looked like it was disformed." Stone called 9-1-1. He testified that Reed and Alex were responsible for Vargas' injuries. 
Reed does not argue that the evidence was legally insufficient to establish that he entered Vargas' habitation without Vargas' consent. Rather, with respect to this point of error, Reed argues that there was "no testimony that only the Appellant could have inflicted the wounds to the victim." Initially, we note that there was no requirement that Reed be the only person who attempted to commit or committed the assault. Further, Justice's testimony that Reed was the only person in Vargas' room when she heard the sounds of the beating, Vargas' identification of Reed's voice, and Stone's testimony that he saw Reed flee from Vargas' room immediately after the beating, coupled with the other evidence introduced in this case, are legally sufficient to establish that Reed committed or attempted to commit an assault on Vargas. 
Because we find the evidence legally sufficient to support the jury's verdict of guilt, we overrule Reed's first point of error. 
 (2) Reed Did Not Preserve His Second Point of Error 
During Stone's cross-examination, Reed's counsel asked, "Was there frequent illegal drug use in that house?" After the question drew the State's objection, counsel argued that he wanted to introduce evidence that Vargas' residence was a drug house and that the evidence was relevant "with regard to a motive for someone else to go in that house and punch Mike Vargas out." Specifically, Reed's counsel argued that the information was "relevant . . . if [Vargas' son] was at that house and he was tweaking and he punched his daddy out and they're lying." When the trial court reminded counsel that Vargas and Stone had already testified that Vargas' son was not present during the incident, counsel replied, "Well, maybe -- all right." The trial court ruled that Reed could question witnesses about their drug use on the day of the incident. However, based on the information available to the trial court at the time of its ruling, it concluded that other references to drug use or evidence that Vargas was selling drugs from the residence was inadmissible under Rules 402 and 403 of the Texas Rules of Evidence. Tex. R. Evid. 402, 403. 
On appeal, Reed argues that the trial court erred in excluding evidence of drug activity allegedly occurring at Vargas' home, but for a reason other than the one he discussed at trial. Reed's briefing, which did not adequately address the trial court's evidentiary ruling, argues merely that "[t]he evidence of drug usage could have shown that Isaiah Alex was the person who caused injury to the victim because of an on-going drug dispute." Reed's argument on appeal is essentially that Alex committed the assault, as opposed to Reed, and that evidence of a drug dispute between Alex and Vargas would constitute relevant, admissible evidence that could potentially establish that Reed was not involved in the assault. Reed's appellate argument differs from the argument made at trial, which suggested that Vargas' son or some other third party might be responsible for the assault. After reviewing the transcript, we conclude that the trial court was not aware of any argument that the drug-related activity was relevant to provide motive for Alex, a co-conspirator, to have committed the assault, as opposed to Reed. "A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial." Lovill v. State, 319 S.W.3d 687, 691 - 92 (Tex. Crim. App. 2009). 
Additionally, to preserve the complaint, Reed must have made an adequate offer of proof, either through questions and answers, or by counsel making a concise statement of the evidence. See Tex. R. Evid. 103(a)(2); Mays v. State, 285 S.W.3d 884, 889 - 90 (Tex. Crim. App. 2009); Love v. State, 861 S.W.2d 899, 903 (Tex. Crim. App. 1993); Duke v. State, 365 S.W.3d 722, 725 - 26 (Tex. App. -- Texarkana 2012, pet. ref'd). At trial, Reed's counsel stated that he expected Reed and two other unnamed witnesses to testify that Vargas was selling drugs from his home. Subsequently, after Reed stated he would not say that he bought drugs or sold drugs in Vargas' home, counsel clarified that he was "anticipating that . . . [Reed would] offer testimony that he [was] privy to knowledge of drug use and drug sales at that house." Counsel made no offer of proof regarding any drug dispute, much less a drug dispute between Alex and Vargas. Reed also made no offer of proof showing that Alex used drugs. We overrule Reed's second issue because we find it unpreserved. See Tex. R. App. P. 33.1. 
(3) The Trial Court Did Not Abuse Its Discretion in Declining to Hold a Hearing on Reed's Motion for New Trial

 In his last point of error, Reed complains of the lack of a hearing on his motion for new trial. "The purposes of a new trial hearing are (1) to determine whether the case should be retried or (2) to complete the record for presenting issues on appeal." Flores-Alonzo v. State, 460 S.W.3d 197, 207 (Tex. App. -- Texarkana 2015, no pet.) (quoting Hobbs v. State, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009)). "Such a hearing is not an absolute right." Id. "We review a trial court's denial of a hearing on a motion for new trial under an abuse of discretion standard and reverse only if the decision was so clearly wrong as to lie outside the zone within which reasonable persons might disagree." Id. at 208 (citing Gonzales v. State, 304 S.W.3d 838, 842 (Tex. Crim. App. 2010)). "Absent such an abuse of discretion, an appellate court is not justified in reversing the trial court's judgment." Id. 
As a pre-requisite to obtaining a hearing on a motion for new trial, the motion for new trial must "be supported by affidavit, either of the accused or someone else specifically showing the truth of the grounds of attack." Reyes v. State, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993). The purpose of this requirement is to prevent "fishing expeditions." Id. Here, Reed's motion was supported by the affidavit of his mother, Tisha Reed, which raised issues of potential juror misconduct. Specifically, Tisha averred that she had an altercation with one of the jurors while working at a daycare facility and that the juror "would sneer and nod her head at" her each time the jury was dismissed. Tisha also stated that she recognized another juror who had witnessed Reed having a drunken argument with his girlfriend at a local club and had kicked Reed in the leg. 
A hearing on a motion for new trial is mandatory only if the "the matters raised in the motion and accompanying affidavit are not determinable from the record" and "the motion and affidavit establish reasonable grounds showing that the defendant could potentially be entitled to relief." Flores-Alonzo, 460 S.W.3d at 207. Therefore, our review of a denial of a hearing on a motion for new trial "is limited to the trial judge's determination of whether the defendant has raised grounds that are both undeterminable from the record and reasonable, meaning they could entitle the defendant to relief." Id. at 207 (quoting Smith v. State, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009)). "This is because the trial judge's discretion extends only to deciding whether these two requirements are satisfied." Id. (quoting Smith, 286 S.W.3d at 339). 
Here, the concerns expressed by Tisha were duly addressed at trial. During the charge conference, the trial court stated that Tisha spoke with the bailiff and tried to inform him that a juror she knew was staring at her. Reed's counsel informed the trial court that Tisha had reported being involved in a conflict with one of the jurors in her capacity as a daycare worker and that another juror was familiar with Reed. Counsel said he obtained the information "well after the trial was underway, after the jury had gone through voir dire." Counsel informed the trial court that raising these issues "would have required an inquiry of the potential juror themselves in front of the bench outside the presence of the other jurors" and explained his belief, "[I]n trial strategy, it would have harmed the case to make those inquiries of the potential jurors, while evidence is being presented, and so that information was purposefully not brought to anyone's attention prior to now." Counsel clarified that he was aware of the issue and decided not to raise it as a matter of trial strategy. Counsel did not move for mistrial and, on the trial court's suggestion, conferenced with the State. In counsel's presence, and after the conference, the State reported, "We're willing to proceed without any further action taken." 
In light of the fact that the concerns and issues raised in Reed's motion for new trial had already been addressed during trial, we conclude that the trial court did not abuse its discretion in concluding that the motion for new trial raised issues that were determinable from the record. Further, because the record demonstrated that Reed's counsel was aware of the issues raised in the motion for new trial, but chose not to pursue them as a matter of trial strategy, we cannot conclude that the trial court abused its discretion in determining that Reed did not raise issues that would entitle him to relief. Accordingly, we overrule Reed's last point of error. 
We affirm the trial court's judgment. 

 Josh R. Morriss, III
 Chief Justice

Date Submitted: August 15, 2018
Date Decided: August 22, 2018

Do Not Publish