In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00149-CR
_____

**JERROLD JOSEPH WINWARD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 16-05-05274-CR**

**MEMORANDUM OPINION**

In one appellate issue, Jerrold Joseph Winward challenges the deadly weapon finding associated with his conviction on a felony DWI. According to Winward, the evidence is insufficient to support the deadly weapon finding. We affirm.

Background

In 2016, a grand jury indicted Winward for driving while intoxicated. The indictment includes enhancement paragraphs exposing Winward to the punishment

1

available for second-degree felonies.[1] Under the indictment, the State had to prove that Winward used or exhibited a deadly weapon, a motor vehicle, when he committed the DWI.

In February 2017, Winward signed a judicial confession in which he admitted that he committed the offense of driving while intoxicated. In the first of two hearings conducted on Winward's case, Winward pleaded true to committing the DWIs that served as the convictions the trial court used to enhance Winward's sentence.[2]

---

[1] Tex. Penal Code Ann. §§ 12.42(a), 49.04, 49.09(b)(2) (West Supp. 2018).

[2] The record shows that the trial court held a hearing on Winward's plea. In the hearing, Winward waived the appearance of a court reporter and he consented to orally stipulate to the evidence, the testimony, and any documents the trial court admitted during the hearing. As a result, we have no reporter's record showing what evidence the State introduced during the hearing on Winward's plea. Yet, when a defendant pleads guilty, the trial court may consider evidence from both the plea hearing and the punishment hearing in assessing the defendant's sentence. *Barfield v. State*, 63 S.W.3d 446, 450 (Tex. Crim. App. 2001); *Flores-Alonzo v. State*, 460 S.W.3d 197, 203 (Tex. App.—Texarkana 2015, no pet.). To establish that insufficient evidence supports a finding in a defendant's case where the defendant has pleaded guilty, the appellate record needs to include both the plea hearing and the punishment hearing. *Hunt v. State*, 967 S.W.2d 917, 918-19 (Tex. App.—Beaumont 1998, no pet.); *see also* Tex. R. App. P. 34.6(c)(5). "A criminal defendant may not waive the making of a record and then, on appeal, rely on the absence of evidence to support reversal of his conviction." *McDougal v. State*, 105 S.W.3d 119, 120-21 (Tex. App.—Fort Worth 2003, pet. ref'd).

While we could resolve Winward's appeal by relying on the above cases to conclude that Winward failed to perfect a record that allows appellate review of his issue, we elect not to do so here. In its brief, the State has not argued that there was

Five weeks after Winward pleaded guilty, the trial court held a second hearing in which the State introduced its evidence relevant to Winward's punishment. At the beginning of that hearing, Winward waived a jury and the prosecutor advised the court that "there is a deadly weapon paragraph in the indictment that he has not pled true to, but I will be trying to prove [that] up in this hearing."

Winward did not testify during the second hearing. Of the seven witnesses who testified in the hearing, only State Trooper Ian Castleschoudt addressed how Winward was driving his truck on the day he was arrested for the DWI that resulted in the deadly weapon finding that is at issue here. During the trooper's testimony, the trooper identified a video recording, taken by a camera located near the passenger's side of his patrol car, that depicts the manner Winward was driving in the period that is relevant to the stop that resulted in his arrest. While the recording is instructive, Trooper Castleschoudt explained that the camera failed to capture everything that he saw from the driver's position in his patrol car.

The video recording reveals that Trooper Castleschoudt was in the inside lane of traffic stopped behind a large truck in the trooper's same lane, at an intersection

evidence relevant to the deadly weapon finding admitted during Winward's first hearing. Additionally, the record in the second hearing, from which we do have a transcript, authorized the trial court to return a deadly weapon finding.

controlled by a light. At the beginning of the recording, Winward's truck is seen stopped next to the large truck, but he is in the outside lane. When the light turned green, the large truck begins to pass through the intersection while Winward's truck delays around three seconds before moving forward. Trooper Castleschoudt follows the large truck when the light turns green. From the recording, Winward sped up so that he could get in front of the large truck after the light at the intersection turned green. In passing the truck, Winward used a portion of the shoulder on the right side of the road because his lane ended a short distance past the intersection. When Winward merged into the remaining lane, the driver of the large truck slowed to allow Winward to cut in front of him.[3]

About twenty-two seconds after Winward passed the large truck, Winward's truck can be seen in the recording traveling on the right shoulder of the road; shortly thereafter, the large truck blocks the view of Winward's truck. About forty-three seconds later, when Trooper Castleschoudt moves his patrol car to the right side of the road, the recording shows a police officer on a motorcycle signaling Winward with its emergency lights to stop. Shortly thereafter, the recording shows that

---

[3] None of the witnesses mention during the hearing whether the roadway seen in the video runs generally north and south or east and west.

Winward has complied with the officer's signal, and he brings his truck to a stop on the right shoulder of the road.

Trooper Castleschoudt's testimony is consistent with the recording, but his testimony includes information about what he saw that is not visible in the recording. According to Trooper Castleschoudt, shortly before Winward was stopped, he saw Winward drive his truck over the center line into oncoming traffic, which required a motorcyclist coming toward him to take evasive action. The trooper acknowledged that in the video, the evasive maneuver is "hard to see."[4]

The recording of the stop shows that Trooper Castleschoudt took over the investigation following the stop about ninety seconds after Winward came to a stop. After Winward told the trooper that he had taken some prescription drugs for seizures and to stabilize his mood, and that he had three prior DWIs, the trooper conducted a field sobriety test on Winward and then placed him under arrest. While Trooper Castleschoudt acknowledged that he did not cite Winward for violating any traffic laws, he stated that he typically does not issue traffic citations after deciding

---

[4] The oncoming motorcycle the trooper referred to can first be seen on the recording shortly before the motorcycle passes the large truck traveling in front of Trooper Castleschoudt's SUV. In the recording, Trooper Castleschoudt is seen standing on the passenger side of Winward's truck advising Winward that he saw Winward cross the centerline into oncoming traffic, and he told Winward that he nearly hit a motorcycle. Around sixty-seven seconds after Winward left the light, fifteen other vehicles met and passed him in the oncoming lane.

to charge someone with a DWI. Trooper Castleschoudt also suggested that, in his opinion, the manner Winward was using his truck that day exposed the traveling public to the risk of serious bodily injury or death.

After the parties rested, the trial court told Winward that it was finding him guilty and finding the enhancement paragraphs and the deadly weapon paragraph of the indictment to be true. Then, the trial court assessed a twelve-year sentence.

Standard of Review

In one issue, Winward argues the evidence is insufficient to support the trial court's deadly weapon finding. According to Winward, the evidence is insufficient to support that finding because the motorcycle officer who stopped him did not testify in the hearing and the trooper never gave him a traffic citation during the stop. Also, Winward argues the recording does not show that he was driving recklessly and that it contradicts the trooper's testimony. Winward argues the recording fails to show that he ever crossed the center line or that the oncoming motorcyclist was required to avoid his truck. He suggests the record does not support Trooper Castleschoudt's conclusion that he was driving his truck recklessly given the information that is seen in the recording.

In evaluating whether the evidence before the trial court authorized the trial court to find that Winward used the truck as a deadly weapon, we view the evidence

6

in the light that most favors the trial court's verdict and determine whether a rational trier of fact could have made the deadly weapon finding based on a standard that requires proof beyond reasonable doubt. *See Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009) (citing *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003)). To prove that the defendant used a vehicle as a deadly weapon, the evidence must establish that the defendant drove his vehicle in a way that it "'posed an actual danger of death or serious bodily injury'" to others. *Brister v. State*, 449 S.W.3d 490, 494 (Tex. Crim. App. 2014) (quoting *Drichas v. State*, 175 S.W.3d 795, 797-98 (Tex. Crim. App. 2005)); *see also* Tex. Penal Code Ann. § 1.07(a)(1)(B) (West Supp. 2018).

While the evidence must show that the defendant was driving his vehicle in a way that placed others in actual danger, the State need not establish the motor vehicle *caused* a serious injury or death; instead, the evidence must show the defendant drove the vehicle in a way that made the vehicle *capable* of causing a serious bodily injury or death. *Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008); *see also Ex parte McKithan*, 838 S.W.2d 560, 561 (Tex. Crim. App. 1992). The State need not establish that the defendant specifically intended to use his motor vehicle as a deadly weapon. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). Stated another way, the State can satisfy its burden by proving the defendant used

7

the truck in a way that made the truck capable of causing a serious bodily injury or death. *Moore v. State*, 520 S.W.3d 906, 908 (Tex. Crim. App. 2017).

Analysis

As the factfinder in the punishment hearing, the trial court heard Trooper Castleschoudt testify that Winward moved into an oncoming lane of traffic and nearly caused a collision with someone on a motorcycle. Because the trooper was in a position in the patrol car that differed from the camera's, the trial court could have reasonably resolved any discrepancies between the recording and the trooper's testimony by concluding that Trooper Castleschoudt could see oncoming traffic better from his position in the car. The court's conclusion crediting the trooper's testimony is reinforced by the facts, in evidence, showing that the trooper advised Winward that he saw the motorcycle take evasive action when he explained to Winward why he had been stopped. Otherwise, the recording is consistent with the trooper's testimony that Winward made many other driving errors during the ninety-second period between the time Winward left the light and when he stopped. Finally, the trial court considered evidence showing the results of Winward's blood test, and the results support the trial court's conclusion that Winward was intoxicated to the point that his driving exposed the others on the road to a significant risk of suffering a serious injury or death.

Considering the relevant factors and the evidence presented in the hearing, we conclude that a rational finder of fact could find that Winward used his truck in a way that made the truck capable of causing a death or serious bodily injury. In this case, the trial court could reasonably find that Winward's truck crossed the centerline when oncoming traffic was present at a time that his presence there created more than just a hypothetical danger to others on the road. We overrule Winward's sole issue and affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on September 12, 2018
Opinion Delivered February 13, 2019
Do Not Publish

Before Kreger, Horton and Johnson, JJ.