**Opinion issued September 25, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-01003-CR

———————————

## EX PARTE STANLEY ANOZIE OBI

On Appeal from the County Criminal Court at Law No. 1
Harris County, Texas
Trial Court Cause No. 1805540A

## OPINION ON REHEARING

Stanley Anozie Obi challenges the trial court's denial of his post-conviction application for writ of habeas corpus, arguing that his trial counsel rendered ineffective assistance by failing to advise him that he faced presumptively mandatory deportation as a result of his guilty plea for the misdemeanor offense of assault of a family member. On original submission, we affirmed on the basis that

Obi had failed to meet his burden under the first prong of *Strickland*. *Ex parte Obi*, -- S.W.3d --, No. 01-12-01003-CR, 2013 WL 4520936, at *5–6 (Tex. App.—Houston [1st Dist.] Aug. 27, 2013, no pet.) (Sharp J. dissenting).  Obi moved for reconsideration en banc, and the State responded.  We *sua sponte* withdraw our opinion and judgment of August 27, 2013, and issue this opinion and judgment in their stead.[1]  While our disposition remains unchanged, we now affirm the trial court's denial of habeas relief under the second prong of *Strickland*.

## BACKGROUND

Obi, a native of Nigeria who holds a bachelor's degree in mechanical engineering, arrived in the United States in January 2010, having already been accepted to a graduate engineering program at Texas A&M in Kingsville.  After dating her for approximately one month, Obi married his wife, Amanda, in March 2011.  At the time she married Obi, Amanda had four children who were not Obi's biological children.  Obi became a legal permanent resident in September 2011, six months after the marriage.

On January 24, 2012, Obi pleaded guilty to the Class A misdemeanor offense of assault of a family member, Amanda.  Pursuant to his plea agreement with the State, the trial court deferred adjudication of his guilt and placed him on

---

[1]    Our withdrawal and reissuance of our opinion and judgment renders Obi's motion for en banc reconsideration moot.  *See Poland v. Ott*, 278 S.W.3d 39, 40–41 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

2

community supervision for 18 months. Shortly thereafter, the Department of Homeland Security initiated removal proceedings against Obi, on the ground that his conviction for a crime of moral turpitude rendered him removable from the United States. *See* 8 U.S.C.S § 1227(a)(2)(A) (LexisNexis 2007 & Supp. 2013) (stating that alien is deportable if, within five years after the date of admission, he is convicted of crime of moral turpitude for which sentence of one year or longer may be imposed).

On June 13, 2012, Obi filed an application for a writ of habeas corpus alleging that his plea counsel did not adequately advise him of the immigration consequences of his guilty plea and therefore provided ineffective assistance of counsel under *Padilla v. Kentucky*, 559 U.S. 356, 357, 130 S. Ct. 1473, 1477 (2010), rendering his guilty plea involuntary. When it denied Obi's application, the habeas court had before it Obi's affidavit, the affidavit of Obi's plea counsel, Allen Guidry, and the live testimony of both Obi and Guidry.

*The affidavits*

Obi's affidavit stated that he did not assault Amanda. He averred that Amanda was abusive and that it was actually Obi who first called the police on January 21, the night before he was arrested, to report Amanda's abuse and assault on Obi. Obi further averred that Amanda's January 22 report to police—that Obi

3

had physically and sexually assaulted her—was false and that Amanda made that report in retaliation for Obi's reporting her abuse of him to police the night before.

Obi averred that he told Guidry the above information and that he had a defense, but that Guidry failed to investigate. Obi asserted that Guidry advised him to plead guilty because "deferred adjudication is not a conviction" and Obi could "avoid a final conviction on [his] record by taking the plea." He averred that Guidry did not tell him that deferred adjudication is considered a conviction for immigration purposes or that his guilty plea would subject him to mandatory deportation. Rather, according to Obi's affidavit, Guidry merely read him the general immigration consequences admonishment in the plea papers.[2] Obi further averred that had he been correctly advised that deferred adjudication is a conviction for immigration purposes and that a guilty plea would subject him to mandatory deportation, he would not have pleaded guilty and would have taken his case to trial.

Obi's plea counsel, Guidry, offered his own affidavit. In it, Guidry averred that he "read the admonishments contained in the plea papers" and also "advised [Obi] that he may be deported for this offense and that this plea would be used against [him] in any immigration hearings related to deportation." Guidry further

---

[2] The admonishment states: "I understand that upon a plea of guilty/*nolo contendere* . . . that if I am not a citizen of the United States, my plea of guilty or *nolo contendere* may form the legal basis for my deportation, exclusion from admission to this country or denial of naturalization under federal laws."

averred that Obi "never stated that he was innocent of this crime" and that, if he had, Guidry "would not have plead him in this matter."

According to Guidry, the State offered an 18-month deferred adjudication as a compromise. The State was willing to offer deferred adjudication due to the reluctance of the complainant to testify, but the term of supervision was longer than normal because it was a violent case perpetrated in front of their juvenile daughter. Guidry averred that Obi asked whether Guidry could get him a better deal, to which Guidry responded that this was the lowest offer the State was willing to make that day. Guidry averred that Obi wanted to get out of jail, so he agreed to plead guilty, signed the plea papers that included the general admonishments about immigration consequences of a guilty plea, and received the trial judge's admonishments regarding deportation, which tracked the language contained in the plea papers. Finally, Guidry averred that when the judge asked Obi whether the immigration admonishment changed Obi's decision to plead guilty, Obi answered "no," and that when the trial judge asked Obi if he was "pleading guilty because he was guilty and for no other reason," Obi responded, "yes."

*Testimony at the hearing*

The habeas court conducted a hearing on Obi's application at which it heard live testimony from Obi and Guidry. Obi testified that Guidry told him that

5

Amanda was claiming Obi had assaulted her by hitting her. Obi testified that he met with Guidry one time, for about ten to fifteen minutes, to discuss his plea. He informed Guidry that he was a legal permanent resident and asked what effect a guilty plea would have on his status. Obi stated that Guidry told him that, because deferred adjudication was not a conviction, his case would be dismissed immediately after he completed the probation and it would not affect his immigration status. Obi testified that Guidry did not tell him that he would be deported as a result of the plea. Rather, according to Obi, Guidry only read the general admonishment contained in the plea papers and did not go into more detail about the immigration consequences of a guilty plea. He testified that he would have gone to trial had he known that a guilty plea would result in his deportation.

By contrast, Guidry testified that he not only read the immigration admonishment contained in the plea papers to Obi, but also elaborated on the consequences of a guilty plea on Obi's immigration status after he determined that Obi was not a citizen of the United States. Guidry testified that he knew he had a duty under *Padilla* to advise defendants considering entering guilty pleas for certain offenses that they will be subject to deportation and that, in those circumstances, it is not enough merely to advise a defendant that he *may* be deported. Guidry testified that after he read the admonishment in the plea papers verbatim out loud to Obi, he also orally advised Obi that the consequences of his

6

plea "will result in him being subject to deportation." Guidry further testified that he told Obi he "would be subject to deportation"—but not that he "would be deported"—because a removal hearing would be held before Obi was deported and Guidry could not predict its outcome with certainty. According to Guidry, even after Guidry explained that Obi would be subject to deportation, Obi never stated that he wanted to go to trial.

Guidry also testified that he discussed with Obi the allegations being made against him. Specifically, Guidry advised Obi that Amanda told the police that Obi had punched, pushed and kicked her and that she was also alleging that Obi had forced Amanda to have sexual intercourse and caused her pain, tearing, and bleeding. According to Guidry, Obi never claimed he was not guilty of assaulting Amanda. Nor did Obi tell Guidry that Amanda had actually assaulted him first, or that Amanda fabricated the report in retaliation for Obi reporting Amanda to the police. Rather, Obi asked, several times, whether Guidry could get the case dismissed. At that point, according to Guidry, he told Obi that he had spoken to the chief prosecutor and tried to negotiate a dismissal but that she said "absolutely, without a doubt, she would not dismiss the case." Guidry explained the offer the State was willing to make: 18-months' deferred adjudication, including some

conditions such as the BIPP[3] course and five additional days in jail. Guidry also testified that Obi agreed that he was pleading guilty because the charge was true. Guidry testified that both he and the trial judge reviewed the admonishments with Obi in open court and that the trial court offered to reset the case to allow time for further investigation, but Obi declined.

Guidry testified that after Obi pleaded guilty and Guidry was leaving the courtroom, Amanda approached him and told him she did not want to pursue the charges. Guidry stated that he asked Amanda if Obi assaulted her, and she said yes.

*The habeas court's findings of fact and conclusions of law*

The habeas court denied relief and entered, among others, the following findings of fact and conclusions of law:

(1) the testimony of Guidry is found to be true and a credible statement of the facts of this case;

(2) prior to Obi pleading guilty, Guidry advised Obi of the evidence, the contents of the police report which included the complainant's statement and discussed a dismissal with the prosecutors at Obi's request. Obi did not deny the offense had occurred nor did he request a trial;

(3) Guidry advised Obi that by signing the plea admonishment, he was pleading guilty freely, voluntarily, without coercion and because it was true, and Obi agreed;

---

[3]    BIPP stands for Batterer's Intervention and Prevention Program. *See In re M.V.*, 343 S.W.3d 543, 547 (Tex. App.—Dallas 2011, no pet.).

(4) prior to Obi pleading guilty, Guidry read to Obi the admonishment regarding immigration consequences in the plea papers and further told Obi "that the consequences of his plea <u>would</u> result in him being subject to deportation";

(5) Guidry told Obi that he was "subject to deportation" instead of using the language "would be deported," because deportation would be determined after a future hearing of which he could not predict the outcome;

(6) Guidry also told Obi that his plea would be used against him in any immigration hearings related to deportation;

(7) after receiving the information regarding the consequences of his guilty plea, Obi did not reject the state's plea bargain and request a trial but instead signed the guilty plea acknowledging receipt and understanding of the consequences of his plea; and

(8) on January 24, 2012, before accepting Obi's plea, the trial court swore Obi in and asked if he needed additional time to have Guidry do more work and more investigation on the case, and Obi responded that he did not need additional time to consult with his attorney;

(9) the trial court asked Obi if he was a citizen and, when Obi indicated that he was not, the trial court reiterated the immigration consequences admonishment contained in the plea papers and specifically asked Obi if he wanted to proceed with a plea of guilty after being told the consequences, to which Obi responded that he did;

(10) Guidry recalled that the court inquired if Obi was pleading guilty because he was guilty and for no other reason, and Obi then pleaded guilty;

(11) Guidry's performance as plea counsel did not fall below the standards set out in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984) and *Padilla*;

(12) Obi's plea was entered freely, intelligently, and voluntarily.

## DISCUSSION

In his sole issue on appeal, Obi contends that the trial court erred in denying habeas corpus relief. Obi argues that (1) Guidry's testimony at the habeas hearing

9

was not credible because it contradicted his affidavit, and (2) even if Guidry's testimony that he informed Obi that he "would be subject to deportation" as a result of his guilty plea was credible, Guidry nevertheless failed to discharge his duty under *Padilla* to inform Obi that his removal was virtually certain and presumptively mandatory.

## A. Standard of Review

We review a habeas court's determination on an application for writ of habeas corpus for abuse of discretion. *Ex parte Murillo*, 389 S.W.3d 922, 926 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The habeas applicant bears the burden of establishing by a preponderance of the evidence that the facts entitle him to relief. *Id.*

In an article 11.072 habeas case, the trial judge is the sole finder of fact. *Ex parte Garcia*, 353 S.W.3d 785, 788 (Tex. Crim. App. 2011). An appellate court reviews the evidence presented in the light most favorable to the trial court's ruling, regardless of whether the court's findings are implied or explicit, or based on affidavits or live testimony, provided they are supported by the record. *Ex parte Murillo*, 389 S.W.3d at 926.

Nevertheless, while we give deference to any underlying historical fact determinations made by the habeas court, we review the ultimate question of prejudice under *Strickland* de novo. *Johnson v. State*, 169 S.W.3d 223, 239 (Tex.

10

Crim. App. 2005); *Ex parte Murillo*, 389 S.W.3d at 927. We will uphold the habeas court's judgment as long as it is correct under any theory of law applicable to the case. *Ex parte Murillo*, 389 S.W.3d at 926.

## B.  Applicable Law

The two-pronged *Strickland* test applies to challenges to guilty pleas, such as the one in the present case, premised on ineffective assistance of counsel. *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S. Ct. 366, 370 (1985). Thus, to be entitled to relief, Obi was required to show by a preponderance of the evidence that (1) trial counsel's performance fell below the objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 687, 694, 104 S. Ct. at 2064, 2068.

"In the *Padilla* context, when the prejudice prong of the *Strickland* test is dispositive, we need address only that prong on appeal. *Ex parte Murillo*, 389 S.W.3d at 927." We make the prejudice inquiry on a case-by-case basis, considering the circumstances surrounding the plea and the gravity of the alleged failure. *Id.* at 928. "'[I]t is not necessary to determine whether trial counsel's representation was deficient if appellant cannot satisfy the second *Strickland* prong.'" *Id.* at 927 (quoting *My Thi Tieu v. State*, 299 S.W.3d 216, 225 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd)).

11

## C. Analysis

Obi contends that the habeas court erred in denying him relief because Guidry failed to admonish Obi that his deportation was a virtual certainty or presumptively mandatory as *Padilla* required. Obi also asserts that if he had known that he faced presumptively mandatory deportation, he would have insisted on going to trial on his assault charge. The State responds that Guidry's counsel was adequate because, as the trial court found, Guidry told Obi that he "would be subject to deportation." It also asserts that Obi failed to establish prejudice.

The central question under the second prong is whether it would have been rational under the circumstances for the applicant to reject the plea bargain. *Ex parte Murillo*, 389 S.W.3d at 928 (citing *Ex parte Fassi*, 388 S.W.3d 881, 887 (Tex. App.—Houston [14th Dist.] 2012, no pet.)); *see Padilla*, 559 U.S. at 372, 130 S. Ct. at 1485 ("[T]o obtain relief on [a claim under *Padilla*], a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."). In a similar case, the Fourteenth Court of Appeals applied a four-factor analysis to guide its analysis of prejudice under *Strickland*. *See Ex parte Murillo*, 389 S.W.3d at 928–30. The habeas court in *Ex parte Murillo* "did not issue any findings of facts or conclusions of law specifically relating to the prejudice prong of *Strickland*," but our sister court nevertheless analyzed prejudice by "review[ing] the circumstances surrounding [the] applicant's

12

plea in light of the evidence presented to the habeas court." *Id.* at 928. Following *Ex parte Murillo*, we will examine whether Obi's insistence on a trial would have been rational under the circumstances in light of the following four factors: (1) whether there is evidence of the applicant's guilt, (2) whether the applicant had any factual or legal defenses, (3) whether immigration status was his primary concern, and (4) how the plea deal compared to the penalties risked at trial. *Id.* at 928–30.

## 1. Evidence of guilt

One key circumstance courts consider when determining whether a decision to reject a plea bargain would have been rational is the strength of the State's case or evidence of the appellant's guilt. *Ex parte Murillo*, 389 S.W.3d at 928.

Here, the record developed in the habeas court does not support the conclusion that Obi's conviction was a foregone conclusion. The record reveals that Amanda was reluctant to press charges. Before Obi entered his guilty plea, Amanda told ADA Manning that, because they were "still going through immigration proceedings," Amanda wanted the charges dropped so that the couple could take classes and work on their marriage. The record also includes a copy of the cover of the State's file, which includes a notation that the complainant was cooperative, but reluctant.

Nonetheless, Amanda had reported the assault to the responding officer in great detail. Amanda's statement, which the officer recorded, detailed Obi's verbal and physical abuse of Amanda on January 22, his sexual assault on Amanda three days earlier, and the fact that Obi did not stop kicking and punching Amanda until he heard Amanda's daughter on the phone with the 911 dispatcher. It also reflected that Amanda did not want to press charges because Obi's visa was conditional upon his being married. Amanda's statement concluded: "I know that what he does to me isn't right, but I don't want to mess up his future." Thus, although the complainant was reluctant, she had provided a detailed statement that the State could have used for impeachment if Amanda recanted at trial.

The record suggests additional evidence may have been available to the State. Amanda's statement to the police officer suggests that the 911 dispatcher may have recorded part of the assault. It also suggests that Amanda's daughter, who dialed 911, witnessed at least part of the assault and could have testified for the State. The responding officer also could have testified for the State. Although he did not witness the incident, his report indicates that he met Amanda at a local fire station shortly after he was dispatched and, upon his arrival, he "noticed the complainant was physically shaken and crying."

In short, we conclude that the State had evidence with which to secure a conviction, particularly if Amanda did not recant, and there was evidence from

14

which it is rational to conclude that it could have secured a conviction even if she did. But because the record falls short of demonstrating that the evidence against Obi was overwhelming, the first factor in the analysis does not weigh strongly in favor of or against a finding of prejudice. *Cf. Ex parte Murillo*, 389 S.W.3d at 929 (concluding no prejudice based partly on strong evidence of guilt where offense report reflected that responding officer heard complainant screaming and saw defendant assaulting complainant or "on top of her," and applicant did not dispute facts in offense report); *Ex Parte Ali*, 368 S.W.3d 827, 840 (Tex. App.—Austin 2012, pet. ref'd) (finding no prejudice because evidence of guilt for marijuana possession was "overwhelming" where State's evidence included video and audio recordings showing defendant delivering drug paraphernalia to undercover officer).

### 2. Factual or legal defenses

Under the second factor, we consider whether Obi had a defense to the charged offense. *See Ex parte Murillo*, 389 S.W.3d at 929; *Ex parte Olvera*, 394 S.W.3d 572, 576–77 (Tex. App.—Dallas 2012) (evidence that the defendant had a defense weighs in favor of finding prejudice), *vacated on other grounds*, No. PD-1215-12, 2013 WL 1149926 (Tex. Crim. App. Mar. 20, 2013) (not designated for publication).

Here, Obi testified at the habeas hearing that he did not commit the offense. He averred, in his affidavit in support of his habeas petition, that he told Guidry

15

that he did not commit the offense, and that Amanda had fabricated her report in retaliation against him for his report of her abuse and assault against him. Obi's assertion of this factual defense at the habeas hearing is a factor that weighs in favor of finding that it could have been rational for Obi to reject a plea bargain. *Cf. Ex parte Murillo*, 389 S.W.3d at 929 (applicant's failure to present affirmative evidence that he had any factual or legal defense to the charge, or that he believed he was not guilty of assaulting his wife, weighed against finding prejudice). But the viability of the defense is undercut by the fact that the trial court found that Obi did not tell Guidry about any defense before the plea and instead raised it for the first time in the habeas proceeding. *Cf. Ex parte Olvera*, 394 S.W.3d at 576–77 (officer's testimony at habeas hearing to effect that applicant, while being arrested, said "I didn't know you were the police," supported applicant's claim that he had defense to charge of assaulting public servant, because he lacked knowledge that person who approached him was officer). Indeed, the trial court expressly found that Obi "did not deny the offense had occurred," and that Obi agreed "he was pleading guilty freely, voluntarily, without coercion and because it was true." We must defer to the trial court's findings. *See Ex parte Fassi*, 388 S.W.3d at 888. Accordingly, this factor—whether Obi had a defense—weighs slightly against a finding of prejudice.

### 3. Immigration status as primary concern

16

Under this factor, courts consider whether the applicant presented evidence indicating that the immigration consequences of his plea were his paramount concern. *Ex parte Murillo*, 389 S.W.3d at 929–30. "An applicant's failure to express concerns about immigration consequences after receiving repeated warnings" weighs against finding prejudice. *Id.* at 930 (citing *Ex parte Fassi*, 388 S.W.3d at 889 n.6).

Here, there is contradictory evidence regarding the extent to which Obi was concerned about the immigration consequences of a guilty plea. Obi averred in his affidavit that he "would have definitely insisted on a trial of [his] case if [he] knew that the plea [would] subject [him] to mandatory deportation." But he made this statement after-the-fact. Obi presented no evidence that he did or said anything to express his concern regarding immigration consequences before pleading guilty, despite receiving multiple admonishments and warnings both from Guidry and from the trial judge. *See Ex parte Fassi*, 388 S.W.3d at 889 n.6 ("[A] defendant's failure to express concerns about immigration consequences after receiving repeated warnings may be a factor to consider.").

Here, after noting that Obi was not a citizen, the trial court reiterated the admonishment regarding immigration consequences and specifically asked Obi if he wanted to proceed with his guilty plea, and Obi responded that he did. The trial court also offered Obi additional time to consult with his attorney, but Obi

17

declined. The trial court did not credit Obi's self-serving testimony; and, given the conflicting evidence, it was free to disregard it. *See Ex parte Fassi*, 388 S.W.3d at 888 (noting that "the habeas court was free to disbelieve appellant's self-serving testimony that he would not have pled guilty if he had been aware of the immigration consequences of his plea" and deferring to habeas court's findings based on credibility). Accordingly, this factor weighs against a finding of prejudice. *See Ex parte Tuan Dinh Phan*, No. 14-11-00766-CR, 2012 WL 6218468, at *5 (Tex. App.—Houston [14th Dist.] Dec. 13, 2012, no pet.) (mem. op., not designated for publication) (finding no prejudice where only evidence supporting appellant's argument that he would have rejected the plea and insisted on going to trial was appellant's self-serving sworn statement in his application for writ of habeas corpus and the trial court found that statement not credible); *Ex parte Fassi*, 388 S.W.3d at 889 (concluding habeas court could have rationally believed immigration consequences were not appellant's primary concern where no evidence in record indicating immigration consequences were appellant's paramount concern, counsel informed appellant that guilty plea may result in deportation, appellant signed plea paperwork containing the admonition, and no evidence appellant expressed his concerns about deportation to the trial court, plea counsel, or anyone else at time of plea); *Ex parte Moreno*, 382 S.W.3d 523, 529 (Tex. App.—Fort Worth 2012, pet. ref'd) ("appellant's apparent total inaction

18

upon receiving repeated verbal and written warnings about the possibility of deportation" supported the trial court's finding that appellant's immigration status was not his primary concern); *cf. Elizondo–Vasquez v. State*, 361 S.W.3d 120, 123 (Tex. App.—Texarkana 2011, no pet.) ("[The defendant] testified that his immigration status was his primary concern and that he discussed it at every meeting with trial counsel. In those discussions, he specifically inquired of trial counsel about the issue and the effect his plea would have upon it, as well as potential outcomes.").

### 4. **Plea deal compared to penalties risked at trial**

Finally, under the fourth factor, we consider the circumstances of the plea deal compared to the penalties the applicant risked by going to trial. *Ex parte Murillo*, 389 S.W.3d at 930. In doing so, we consider: (1) evidence concerning the likelihood of success at trial, (2) evidence presented by the applicant that some other plea deal would have helped him avoid negative immigration consequences, and (3) evidence presented by the applicant regarding the likelihood of obtaining probation if convicted at trial. *Id.* at 930.

Obi was charged with a Class A misdemeanor offense of assault of a family member. Although it was not overwhelming, the evidence concerning likelihood of success at trial favored the State. If convicted, Obi faced up to one year's confinement and a $4,000 fine. *See* Tex. Penal Code Ann. § 12.21 (West 2011);

19

*id.* § 22.01(a)(1) (West Supp. 2013). The terms of his plea bargain included 18 months' deferred adjudication and other conditions, including completion of the BIPP course and five additional days in jail. While Obi may have been eligible for probation if convicted at trial, he failed to present any evidence that probation was likely. *See Ex parte Murillo*, 389 S.W.3d at 931 (noting applicant failed to present evidence that he likely would receive probation if convicted at trial); *cf. Salazar v. State*, 361 S.W.3d 99, 103 (Tex. App.—Eastland 2011, no pet.) (noting evidence of community support for probation). More importantly, if Obi were convicted at trial, he faced deportation regardless of whether he received probation. *See Enyong v. State*, 369 S.W.3d 593, 600–02 (Tex. App.—Houston [1st Dist.] 2012) (concluding that deportation consequence was "truly clear" for conviction for misdemeanor assault of a family member), *vacated on other grounds*, 397 S.W.3d 208 (Tex. Crim. App. 2013).

Because it is reasonable to conclude that the State could likely have secured a conviction, the evidence supports the conclusion that avoiding jail time was Obi's primary concern, the plea deal allowed Obi to serve only five days in jail rather than face up to one year of jail time if convicted after a trial, and Obi faced presumptively mandatory deportation either way, we conclude that the penalties risked at trial weigh against finding that Obi was prejudiced by his plea deal. *See Ex parte Murillo*, 389 S.W.3d at 931 ("Essentially, the choice facing applicant was

20

whether he wanted to take a plea deal where he could receive little or no jail time and would face presumptively mandatory deportation or reject the deal and proceed to trial, where there was a significant likelihood he would be convicted, and where he risked the exact same deportation consequence and a harsher penalty of up to one full year in jail."); *Ex parte Fassi*, 388 S.W.3d at 888 (fact appellant faced up to six months' confinement and $2,000 fine if convicted suggests that rational noncitizen defendant would likely not risk trial because he would face harsher criminal penalty in addition to immigration consequences of pleading guilty where plea offer sentenced defendant to six months' deferred adjudication probation and assessed $150 fine); *Ex parte Moreno*, 382 S.W.3d at 529 ("Under these circumstances, the trial court could have reasonably found that it was logical for appellant to take the plea bargain for a lesser charge with the possibility of receiving deferred adjudication, instead of incurring the time and expense of trial, where appellant could have been convicted and sentenced to substantial incarceration in addition to being deported.").

Considering these four factors, and giving appropriate deference to the trial court's finding that Guidry's, rather than Obi's, account of the facts was credible, we conclude that the trial court reasonably could have (1) rejected Obi's self-serving claim that he would have insisted on going to trial had he known that a plea would result in mandatory deportation and (2) concluded that it would not

21

have been rational for Obi to reject a plea deal under the circumstances. Accordingly, we hold that the trial court did not err in concluding that Obi failed to carry his burden under *Strickland*'s second prong. *See Ex parte Murillo*, 389 S.W.3d at 931–32 ("Aside from applicant's own self-serving statement that he would have insisted his counsel take his case to trial had he known he would be deported, he presented no other evidence corroborating his position that it would have been rational to reject a plea deal under the circumstances."); *Ex parte Fassi*, 388 S.W.3d at 888 (noting that "the habeas court was free to disbelieve appellant's self-serving testimony that he would not have pled guilty if he had been aware of the immigration consequences of his plea" and deferring to habeas court's findings based on credibility); *Ex parte Tovilla*, No. 14-10-01120-CR, 2012 WL 113049, at *3 (Tex. App.—Houston [14th Dist.] Jan. 12, 2012, pet. ref'd) (mem. op., not designated for publication) ("As the sole judge of credibility, the trial court was free to accept [counsel's] testimony over [appellant's]"); *but see Ex parte Leal*, 427 S.W.3d 455, 462 (Tex. App.—San Antonio 2014, no pet.) (not considering *Ex parte Murillo* and holding appellant's affidavit stating that had he known he would be deported, he would not have entered plea and would have insisted on going to trial is sufficient to meet second prong); *Ex parte Romero*, 351 S.W.3d 127, 131 (Tex. App.—San Antonio 2011) (habeas court abused its discretion denying writ

22

because applicant averred in his affidavit that he would not have pled guilty), *vacated on other grounds*, 393 S.W.3d 788 (Tex. Crim. App. 2013).

## CONCLUSION

We affirm the judgment of the trial court and dismiss all pending motions as moot.

Rebeca Huddle
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Publish. — Tex. R. App. P. 47.2(b).

23