**Opinion issued September 15, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-00014-CR

———————————

## EX PARTE JOSE E. DUQUE, Appellant

---

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1363049-A**

---

## MEMORANDUM OPINION

Appellant, Jose E. Duque ("Duque"), appeals from the denial of his post-conviction application for a writ of habeas corpus. Duque, in his sole issue, contends that his plea counsel's failure to provide accurate immigration advice, required under *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473 (2010), resulted in ineffective assistance of counsel in violation of the Sixth Amendment and, as a

result, rendered his 2012 guilty plea involuntary. We hold that the trial court acted within its discretion in denying the application and affirm.

## BACKGROUND

Duque, a native of Honduras, entered the United States in 1997 and obtained lawful permanent resident status on March 19, 2011. On October 1, 2012, Duque was charged with the third-degree felony offense of assault of a family member—impeding breathing. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1), (b)(2)(B) (West Supp. 2014). On October 8, 2012, Duque, through his plea counsel, Raul Rodriguez, pleaded guilty pursuant to an agreement that the prosecutor would recommend that Duque receive two years deferred adjudication and be assessed a $200.00 fine. *See* TEX. PENAL CODE ANN. § 12.34 (West Supp. 2014).

On October 8, 2012, the trial court deferred making any finding on Duque's guilt, ordered Duque be placed on deferred adjudication community supervision for two years, and assessed a $200.00 fine. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, §§ 3(b), 5(a) (West Supp. 2014). The record shows that Duque waived his right to have a court reporter record the plea hearing.[1]

On April 22, 2013, the U.S. Department of Homeland Security initiated removal proceedings against Duque by issuing a Notice to Appear before an

---

[1] Because the clerk's record did not contain the guilty plea or plea admonishment papers, the trial clerk filed a supplemental clerk's record on June 25, 2015, after the Clerk of this Court requested those documents. One of the Statement and Waivers of Defendant, initialed by Duque, states that he waived the right to have the court reporter record his plea.

immigration judge. The Notice to Appear stated that Duque was recently adjusted to lawful permanent resident status, but that his October 8, 2012 conviction for the felony crime of assault of family/house member—impeding breathing, which was committed against the complainant, a person protected from domestic violence by the laws of any state, rendered him removable. Soon afterwards, U.S. Immigrations and Customs Enforcement ("ICE") apprehended Duque, placed him on an immigration hold, and instituted deportation/removal proceedings.

ICE charged that Duque was subject to removal from the United States, apparently under sections 237(a)(2)(A)(i) and 237(a)(2)(E)(i) of the Immigration and Nationality Act ("INA"). Section 237(a)(2)(A)(i) provides that:

> Any alien who—
>
> > (I)    is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(j) of this title) after the date of admission, and
> >
> > (II)   is convicted of a crime for which a sentence of one year or longer may be imposed,
>
> is deportable.

8 U.S.C.S. § 1227(a)(2)(A)(i) (LexisNexis 2007 and Supp. 2014). Also, Section 237(a)(2)(E)(i) provides that:

> Any alien who at any time after admission is convicted of a crime of domestic violence, . . . is deportable. For purposes of this clause, the

3

term "crime of domestic violence" means any crime of violence . . . by any other individual against a person who is protected from that individual's acts under the domestic or family violence laws of the United States or any State, Indian tribal government, or unit of local government.

8 U.S.C.S. § 1227(a)(2)(E)(i) (LexisNexis 2007 and Supp. 2014).

The Attorney General of the United States "may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien (1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony." 8 U.S.C.S. § 1229b(a) (LexisNexis 2007 and Supp. 2014). On March 24, 2014, Duque claimed that the immigration judge denied his application to cancel removal and ordered him removed.

On May 19, 2014, Duque, through habeas counsel Octavio M. Rivera, filed an application for a writ of habeas corpus, under Texas Code of Criminal Procedure article 11.072. Duque claimed that his plea counsel, Rodriguez, provided ineffective assistance of counsel by failing to advise him about the immigration consequences of his plea, as required under *Padilla*, 559 U.S. at 374, 130 S. Ct. at 1486, and thus, rendered his plea involuntary. Duque submitted an affidavit stating that Rodriguez did not advise him that his removal was "virtually mandatory" as a result of his conviction. Duque stated that he was put in removal

4

proceedings as a result of his conviction, he found out during removal proceedings that he was not eligible to apply for any discretionary relief, and he was ordered to be removed on March 24, 2014. Duque's affidavit further alleged that if he had known that his guilty plea would have made his deportation virtually mandatory or that he would not qualify for discretionary relief, he would not have pleaded guilty and would have gone to trial.

Duque also submitted an affidavit from his plea counsel, Raul Rodriguez. Rodriguez's affidavit stated that, because he was unaware that assault of a family member—impeding breathing was considered a crime involving moral turpitude or domestic violence for immigration purposes such that it would make Duque subject to automatic deportation, he "did not inform Mr. Duque of it." Rodriguez's affidavit further stated that, because he was unaware that a crime involving moral turpitude within the seven-year period after admission would prevent a legal permanent resident from applying for cancellation of removal during removal proceedings, he "did not inform Mr. Duque of it."

**The Habeas Court's Hearing and Findings of Fact and Conclusions of Law**

Before denying appellant's habeas application on November 21, 2014, the trial judge stated that she had reviewed the affidavits attached to Duque's habeas application, the evidence presented at the writ hearing, and official court records in the underlying proceeding. The court held a writ hearing on September 23 and

5

October 2, 2014, in which Duque's immigration law expert, Mayda Gil de Lamadrid, his plea counsel, Raul Rodriguez, and Duque testified.

Although Rodriguez testified that he had informed Duque that he could be deported because of his guilty plea, Rodriguez was unaware that because the crime involved moral turpitude that Duque was automatically going to be put into removal proceedings. The trial judge noted during Rodriguez's testimony at the writ hearing that she recalled asking Rodriguez at the 2012 plea hearing whether Duque was a permanent resident and informing Duque he could be deported, both of which Rodriguez confirmed. The trial judge noted that it was her handwriting on one of Duque's plea papers, filed on October 8, 2012, and attached as an exhibit to the findings and conclusions, that stated, "Per attorney, [defendant] is permanent resident. Defendant understands he could be deported."

Duque, via a Spanish interpreter, testified that Rodriguez told him that he could be removed following his guilty plea, but not that the immigration authorities were going to arrest him and seek to deport him automatically. The trial court did not permit the State to cross-examine Duque regarding whether he thought there was a strong case against him or not. Duque further testified on cross-examination that he was taken into immigration custody immediately after he pleaded guilty in October 2012.

The responding Houston Police Department Officer Kevin Truong and Tim Ballengee, the assistant district attorney (ADA) at Duque's 2012 plea hearing, testified for the State. At the end of the writ hearing, although stating that she "th[ought] it [was] a close call," the trial court recommended denying the writ on the record and requested the State and Duque's writ hearing counsel, Mr. Rivera, to prepare proposed findings of fact and conclusions of law.

On November 21, 2014, the trial court signed the State's proposed findings of fact and conclusions of law, and order. The court made the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. The Court finds that the applicant was convicted on October 8, 2012, out of the 184th District Court, Harris County, Texas, in cause number 1363049, where the applicant entered a plea of guilty to the third degree felony offense of Assault-Family Member/Impeding Breath. However, the Court withheld a finding of guilt and the applicant was sentenced to a 2 year Deferred Adjudication and a $200.00 fine. . . .

2. The applicant did not directly appeal his conviction.

3. On March 8, 2013, the Court filed a Motion to Adjudicate on the applicant due to his admission to probation staff that he had consumed alcohol on February 17, 2013. . . .

4. On April 2, 1013, the Court amended the applicant's Deferred Adjudication conditions by giving the applicant 25 days jail therapy and adding 2 Alcohol Anonymous meetings a week.

5. The State dismissed the Motion to Adjudicate on April 2, 2013, after additional conditions were added to the applicant's Deferred Adjudication. . . .

7

6. On April 2, 2014, the Court filed a second Motion to Adjudicate due to the applicant not reporting to his Community Supervision Officer as ordered. . . .

7. The Court finds that the applicant is currently on deferred adjudication.

8. The Court finds, based on the application, that the applicant is a legal permanent resident in the United States.

9. The Court finds based on the court reporter's record that the applicant was properly admonished and informed of the potential immigration consequences of his plea consistent with TEX. CODE CRIM. PROC. Art. 26.13.

10. The Court finds, based on the clerk's record, that on the face of the applicant's plea agreement with the State that he was admonished:

> "by the Court and the defense attorney that if he is in the USA illegally or is not a US citizen, he/she may be deported back to his/her country. The defendant also acknowledged in open court that neither their attorney nor anyone else has indicated or promised otherwise."[2]

11. The Court finds that the applicant was represented by Mr. Raul Rodriguez ("Rodriguez") in his primary case.

12. The Court finds that the testimony offered by the applicant's previous attorney, Raul Rodriguez, was credible.

13. The Court finds based on the credible testimony of Rodriguez, that Rodriguez was aware that the applicant was not a United States citizen.

14. The Court finds based on the Court reporter's record of Rodriguez [sic] that Rodriguez informed the applicant that a

---

[2] The general admonishments state, in pertinent part, with Duque's initials indicating that he understood them, that "if you are not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense with which you are charged in this case may result in your deportation, or your exclusion from admission to this country, or your denial of naturalization under Federal law."

8

conviction could result in the applicant's potential deportation from the country.

15. The Court finds based on the Court reporter's record of Rodriguez [sic] that while taking the applicant's plea the Court confirmed that Rodriguez had informed the applicant that he could be deported based upon the plea. . . .[3]

16. The Court finds that the testimony from Harris County Assistant District Attorney, Tim Ballengee, [is] credible.

17. The Court finds, based on the Court reporter's record, that the testimony of Tim Ballengee referring to admonishments and immigration consequences given at the time the applicant took his plea [is] credible.

18. The Court finds that the testimony given by Officer K. Truong, referring to the strength of the State's case against the applicant [is] credible.

19. The Court finds, based on the totality of the evidence presented, assertions made, and the testimony given that the applicant was not credible.

20. The Court finds the applicant's assertion that he would not have pled guilty but for the alleged deficient conduct but would have insisted on going to trial is not credible.

21. The Court finds that the applicant's plea was voluntary.

22. The Court finds that the assertion made by applicant that he was automatically deported following his voluntary plea, [is] not credible.

23. The Court finds that the applicant entered his plea agreement on October 8, 2012.

---

[3] The trial judge was referring to the writ hearing record when she confirmed that Rodriguez had told her that Duque was a permanent resident and that Duque was informed that he could be deported. As noted above, the trial judge confirmed that it was her handwriting on one of Duque's plea papers, attached as an exhibit to the findings and conclusions, that stated, "Per attorney, [defendant] is permanent resident. Defendant understands he could be deported."

24.  The Court finds that deportation proceedings were not initiated until April 22, 2013. . . .

25.  The Court finds based on the Court reporter's record, and consistent with the Court's previous ruling, the applicant's writ is denied.

## CONCLUSIONS OF LAW

1.  The applicant fails to show that counsel's conduct fell below an objective standard of reasonableness and that, but for trial counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting the *Strickland* standard in Texas); and *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (defining the two-part *Strickland* standard).

2.  The totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of counsel in the primary case.

3.  The applicant fails to show that his initial guilty plea was unlawfully induced, made involuntarily, or made without an understanding of the nature of the charge against him and the consequences of his plea.

4.  The applicant fails to overcome the presumption that his initial guilty plea was knowingly and voluntarily made. *Wilson v. State*, 716 S.W.2d 953, 956 (Tex. Crim. App. 1986); *Fuentes v. State*, 688 S.W.2d 542, 544 (Tex. Crim. App. 1985).

5.  In all things, the applicant has failed to demonstrate that his conviction was improperly obtained.

10

Duque filed his notice of appeal from the denial of his habeas application in the trial court on November 24, 2014.[4]  After this Court abated the appeal because the clerk's record did not contain the trial court's certification of the right of appeal, the trial clerk filed a supplemental clerk's record on May 29, 2015, containing the trial court's certification that Duque has the right of appeal from the denial of his habeas application.

## DISCUSSION

In his sole issue, Duque asserts that the trial court abused its discretion in denying his habeas application because he received ineffective assistance of counsel.  He claims that, because his plea counsel failed to advise him of the immigration consequences of his 2012 guilty plea, in violation of *Padilla*, 559 U.S. at 374, his guilty plea was rendered involuntary.

### A.    Standard of Review

"An applicant seeking habeas corpus relief on the basis of an involuntary guilty plea must prove his claim by a preponderance of the evidence."  *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006); *see also Ex parte Mandujano*, No. 01-12-00922-CR, 2013 WL 4007801, at *3 (Tex. App.—Houston [1st Dist.] Aug. 6, 2013, no pet.) (mem. op., not designated for publication).  The applicant

---

[4]    On January 8, 2015, the trial clerk filed an affidavit in this Court stating that there had been a delay in forwarding and processing Duque's notice of appeal which, in turn, delayed the forwarding of the appeal to this Court.  The Clerk of this Court did not receive Duque's notice of appeal until January 7, 2015.

11

bears the burden to establish that a reasonable probability exists that, but for counsel's advice, he would not have pleaded guilty and would have insisted on going to trial. *See Ex parte Ali*, 368 S.W.3d 827, 835 (Tex. App.—Austin 2012, pet. ref'd). Further, the applicant must show that a decision to reject the plea bargain would have been rational under the circumstances. *See id.* (citing *Padilla,* 559 U.S. at 372, 130 S. Ct. at 1485).

When reviewing a trial court's ruling on a habeas corpus application, we view the evidence presented in the light most favorable to that ruling, and we must uphold that ruling absent an abuse of discretion. *See Ex parte Mandujano*, 2013 WL 4007801, at *3 (citing *Ex parte Ali*, 368 S.W.3d at 831). We "afford almost total deference to a trial court's fact findings in habeas proceedings, especially when those findings are based upon credibility and demeanor." *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006) (quoting *Ex parte White*, 160 S.W.3d 46, 50 (Tex. Crim. App. 2004)). We similarly defer to the trial court's application of the law to the facts if that resolution turns upon credibility and demeanor determinations. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). If the resolution of the ultimate question turns on an application of law, we review the determination de novo. *See Ex parte Mandujano*, 2013 WL 4007801, at *3 (citing *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App.

App. 2003), *overruled in part on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007)).

In an article 11.072 habeas case, the trial judge is the sole finder of fact. *See Ex parte Obi*, 446 S.W.3d 590, 596 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (citing *Ex parte Garcia*, 353 S.W.3d 785, 788 (Tex. Crim. App. 2011)). An appellate court reviews the evidence presented in the light most favorable to the trial court's ruling, regardless of whether the court's findings are implied or explicit, or based on affidavits or live testimony, provided they are supported by the record. *See Ex parte Murillo*, 389 S.W.3d 922, 926 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Nevertheless, while we give deference to any underlying historical fact determinations made by the habeas court, we review the ultimate question of prejudice under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), de novo. *See Johnson v. State*, 169 S.W.3d 223, 239 (Tex. Crim. App. 2005); *Ex parte Murillo*, 389 S.W.3d at 927. We will uphold the habeas court's judgment as long as it is correct under any theory of law applicable to the case. *See Ex parte Taylor*, 36 S.W.3d 883, 886 (Tex. Crim. App. 2001) (per curiam); *Ex parte Murillo*, 389 S.W.3d at 926.

**B.    Applicable Law**

In *Padilla,* the Supreme Court held that the Sixth Amendment requires an attorney for a criminal defendant to provide advice about the risk of deportation arising from a guilty plea.  559 U.S. at 374, 130 S. Ct. at 1486.  Counsel's performance is deficient if counsel fails to advise a noncitizen client about deportation consequences that are "truly clear."  *Padilla*, 559 U.S. at 369, 130 S.Ct. at 1483; *see also Ex parte Altobji*, No. 01-14-01008-CR, 2015 WL 505202, at *2 (Tex. App.—Houston [1st Dist.] Feb. 5, 2015, no pet.) (per curiam) (mem. op., not designated for publication).  "When the law is not succinct and straightforward," however, counsel "need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences."  *Padilla*, 559 U.S. at 369, 130 S.Ct. at 1483; *see also Ex parte Pho Ri Ma*, No. 01-14-00462-CR, 2014 WL 4783007, at *2 (Tex. App.—Houston [1st Dist.] Sept. 25, 2014, pet. ref'd) (mem. op., not designated for publication). Because Duque entered his plea in 2012 after *Padilla* was decided, *Padilla* applies here.  *See Chaidez v. United States*, 133 S. Ct. 1103, 1113 (2013); *see also Ibarra v. State*, 445 S.W.3d 285, 287 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd); *Ex parte Mandujano*, 2013 WL 4007801, at *2.

The two-pronged *Strickland* test applies to challenges to guilty pleas, such as the one in the present case, premised on ineffective assistance of counsel.  *See Ex*

14

*parte Obi*, 446 S.W.3d at 596 (citing *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S. Ct. 366, 370 (1985)). Thus, to be entitled to relief, appellant was required to show by a preponderance of the evidence that (1) trial counsel's performance fell below the objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 687–88, 694, 104 S. Ct. at 2064, 2068.

"'In the *Padilla* context, when the prejudice prong of the *Strickland* test is dispositive, we need address only that prong on appeal.'" *Ex parte Obi*, 446 S.W.3d at 596 (quoting *Ex parte Murillo*, 389 S.W.3d at 927). We make the prejudice inquiry on a case-by-case basis, considering the circumstances surrounding the plea and the gravity of the alleged failure. *Id.* (citation omitted). "'[I]t is not necessary to determine whether trial counsel's representation was deficient if appellant cannot satisfy the second *Strickland* prong.'" *Id.* (quoting *Ex parte Murillo*, 389 S.W.3d at 927).

## C.    Analysis

Duque contends that the habeas court erred in denying him relief because Rodriguez failed to advise Duque that his deportation was virtually mandatory, as required by *Padilla*, 559 U.S. at 369, and he asserts that he would have insisted on going to trial had he known that he faced mandatory deportation following his guilty plea. The State contends that Rodriguez provided adequate assistance by

informing Duque that he may be deported after his guilty plea and that, in any event, he failed to establish prejudice.

As noted above, there is no need to analyze the first *Strickland* prong if the second prong, prejudice, is dispositive. *See Ex parte Obi*, 446 S.W.3d at 596 (citation omitted). "The central question under the second [*Strickland*] prong is whether it would have been rational under the circumstances for the applicant to reject the plea bargain." *Id.* (citations omitted). We examine whether Duque's insistence on a trial would have been rational under the circumstances in light of the following four factors: (1) whether there is evidence of the applicant's guilt, (2) whether the applicant had any factual or legal defenses, (3) whether immigration status was his primary concern, and (4) how the plea deal compared to the penalties risked at trial. *Id.* at 597 (citation omitted).

With respect to the first factor, evidence of guilt, the trial court found Officer Truong's testimony, referring to the strength of the State's case against Duque, credible. We defer to the trial court's credibility findings on this issue. *See Ex parte Amezquita,* 223 S.W.3d at 367. The evidence developed at the writ hearing supported the trial court's finding No. 18 that the State had strong evidence, because Officer Truong testified that he spoke with the complainant, and the complainant's son who witnessed the altercation, and Officer Truong observed visible marks on the complainant's neck, all of which would likely have secured a

16

conviction. Thus, the first factor weighs strongly in favor against a finding of prejudice because there was substantial evidence of Duque's guilt.

As for the second factor, we consider whether Duque had a defense to the charged offense. *See Ex parte Obi*, 446 S.W.3d at 598 (citations omitted). Duque did not raise any allegations in his affidavit regarding whether he thought he had a defense, other than to state that his family had hired Rodriguez to represent him because he wanted to go to trial. The trial court, at the writ hearing, did not permit the State to cross-examine Duque regarding whether he thought there was a strong case against him or not. However, the trial court found that Duque's plea was voluntary and that he failed to show that it was unlawfully induced or made without an understanding of the nature of the charge against him and the consequences of the plea. As noted above, we must defer to the trial court's factual findings. *See Ex parte Amezquita,* 223 S.W.3d at 367. Thus, this second factor weighs against a finding of prejudice. *See Ex parte Obi*, 446 S.W.3d at 598.

With respect to the third factor—immigration status as primary concern— courts consider whether the applicant presented evidence indicating that the immigration consequences of his plea were his paramount concern. *See Ex parte Obi*, 446 S.W.3d at 598. "'An applicant's failure to express concerns about immigration consequences after receiving repeated warnings weighs against finding prejudice.'" *Id.* (quoting *Ex parte Murillo*, 389 S.W.3d at 930). Duque's

statements, in his affidavit and at the writ hearing, that he would have insisted on going to trial if he knew that the guilty plea would have made his deportation virtually mandatory, were made after-the-fact. There was no evidence that Duque expressed these concerns before pleading guilty, despite receiving multiple warnings about possible immigration consequences from both Rodriguez and the trial judge. *See Ex parte Obi*, 446 S.W.3d at 598 (citation omitted).

Moreover, at the writ hearing, Duque and his plea counsel, Rodriguez, disputed whether Rodriguez had properly advised Duque about the effect of a guilty plea on his immigration status. The trial court found that, based on the clerk's record, on the face of the plea agreement, Duque was admonished by the court and the defense attorney at the time of his plea that if he was not a U.S. citizen, that he may be deported back to his country. Similarly, the trial court found that the testimony offered by Rodriguez was credible, that Rodriguez was aware that Duque was not a U.S. citizen, and that both Rodriguez and the court had informed Duque that a conviction could result in his deportation.

Furthermore, the trial court found ADA Ballengee's testimony, referring to the admonishments and immigration consequences that were given at the time of Duque's plea, credible. The trial court found that Duque's assertion that he would not have pleaded guilty, but for the alleged deficient conduct by his plea counsel and would have insisted on going to trial, was not credible. Finally, the trial court

18

found that Duque's other assertion, that he was automatically deported following his voluntary plea, was not credible because he entered his plea agreement on October 8, 2012, and deportation proceedings were not initiated until April 22, 2013. The trial court did not credit Duque's self-serving testimony and, given the conflicting evidence, was free to disregard it. *See Ex parte Obi*, 446 S.W.3d at 599 (citation omitted). As noted above, we must defer to the trial court's finding on these issues, as their resolution turns on an evaluation of the witnesses' credibility and demeanor. *See Ex parte Amezquita,* 223 S.W.3d at 367. Therefore, this third factor weighs against a finding of prejudice.

Finally, with respect to the fourth factor—how the plea deal compared to the penalties risked at trial—we consider three additional subfactors: (1) evidence concerning the likelihood of success at trial, (2) evidence presented by the applicant that some other plea deal would have helped him avoid negative immigration consequences, and (3) evidence presented by the applicant regarding the likelihood of obtaining probation if convicted at trial. *See Ex parte Obi*, 446 S.W.3d at 599 (citation omitted). As noted above, Duque was charged on October 1, 2012 with the third-degree felony offense of assault of a family member—impeding breathing. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1), (b)(2)(B) (West Supp. 2014). For the first risk subfactor, there was substantial evidence of

Duque's guilt. Thus, the evidence concerning the likelihood of success at trial favored the State. *See Ex parte Obi*, 446 S.W.3d at 600.

With respect to the second risk subfactor, Duque did not present any evidence at the writ hearing or in his habeas application that some other plea deal would have helped him avoid negative immigration consequences. If convicted after trial of a third-degree felony, Duque faced a minimum of two years and a maximum of ten years in prison and up to a $10,000.00 fine. *See* TEX. PENAL CODE ANN. § 12.34 (West Supp. 2014). The terms of Duque's favorable plea bargain included no jail time in exchange for the trial court placing him on two years deferred adjudication and assessing a $200.00 fine.

Similarly, as for the third, and final, risk subfactor, the likelihood of obtaining probation if convicted after trial, although Duque may have been eligible for probation if convicted after trial, he failed to present any such evidence that probation was likely. *See Ex parte Obi*, 446 S.W.3d at 600. More importantly, if Duque were convicted at trial, he likely faced deportation regardless of whether he received probation. *See id.* Thus, we conclude that the penalties risked at trial, where Duque faced a significant likelihood of conviction with a minimum of two years' prison time, weigh against finding that Duque was prejudiced by his plea deal. *See id.* (citations omitted).

20

Consequently, after considering these four factors and giving appropriate deference to the trial court's findings of fact that Duque's plea counsel, Rodriguez, was credible and that Duque was not credible, we conclude that the trial court did not err in (1) finding Duque's testimony not credible and rejecting his assertion that he would have insisted on going to trial had he known that he faced mandatory deportation after pleading guilty; and (2) concluding that it would not have been rational for Duque to reject a plea deal under the circumstances. *See Ex parte Obi*, 446 S.W.3d at 600. Therefore, we hold that the trial court did not err in concluding that Duque failed to carry his burden of showing that, with respect to the second prong of *Strickland*, but for the alleged deficient conduct by plea counsel, there was a reasonable probability that he would have gone to trial. *See id.* (citing, *inter alia*, *Ex parte Murillo*, 389 S.W.3d at 931–32) ("Aside from applicant's own self-serving statement that he would have insisted his counsel take his case to trial had he known he would be deported, he presented no other evidence corroborating his position that it would have been rational to reject a plea deal under the circumstances."); *see also Ex parte Mandujano*, 2013 WL 4007801, at *4 (holding that, with respect to second prong of *Strickland,* record supports trial court's finding that applicant opted for plea because, among other reasons, he did not want to risk going to jail, and failed to prove that he would have rejected plea and gone

21

to trial, but for any faulty advice).  Accordingly, we hold that the trial court acted within its discretion in denying Duque habeas relief and we overrule his sole issue.

## CONCLUSION

We affirm the order of the trial court denying habeas relief.

## PER CURIAM

Panel consists of Justices Jennings, Higley, and Brown.

Do not publish.  TEX. R. APP. P. 47.2(b).