# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00735-CR

**Ex parte Oscar Pena**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. D-1-DC-15-300205-B, HONORABLE CLIFFORD A. BROWN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Oscar Pena appeals from the habeas court's order denying his application for a writ of habeas corpus pursuant to Texas Code of Criminal Procedure article 11.072. *See* Tex. Code Crim. Proc. art. 11.072. Pena was charged with burglary of a habitation, a second degree felony. *See* Tex. Penal Code § 30.02. Pena entered a guilty plea pursuant to a plea agreement with the State. The trial court deferred adjudication and placed Pena on community supervision for a period of eight years.[1] Pena later filed an application for a writ of habeas corpus asserting that his guilty plea was involuntary as the result of ineffective assistance of counsel.[2] The habeas court denied Pena's writ application. In a single issue on appeal, Pena contends the habeas court abused its

---

[1] The plea agreement also disposed of three felony charges against Pena for unauthorized use of a motor vehicle.

[2] Pena's original application for a writ of habeas corpus was filed on July 25, 2016 and requested habeas relief for his three unauthorized use of a motor vehicle cases and his burglary of a habitation case. Because the habeas court did not have jurisdiction to grant relief in the unauthorized use of a motor vehicle cases, Pena filed a subsequent application for a writ of habeas corpus on August 24, 2016, requesting relief only in his burglary of a habitation case. As such, only Pena's burglary of a habitation case is relevant to this appeal.

discretion by finding he was not prejudiced by his counsel's allegedly deficient performance in failing to explain the risk of deportation and the immigration consequences of his plea. We will affirm the habeas court's order denying Pena's writ application.

## BACKGROUND

According to the offense report, on January 7, 2015, Detective Bobby Leal was contacted by patrol officers with the Austin Police Department who reported that they were at the scene of a recovered stolen vehicle. The patrol officers found three suspects—a juvenile male, a juvenile female, and Pena—inside the stolen vehicle. Upon arrival at the scene, Detective Leal discovered several items inside the vehicle that had been reported stolen from the same residence as the vehicle. Additionally, the juvenile female was wearing a watch that was later confirmed as stolen from the same residence as the vehicle.

When the burglary victim arrived at the scene, she identified the recovered vehicle and all of the recovered property as stolen from her residence. The victim completed and signed a sworn burglary victim statement in which she stated that she had not given anyone permission to enter her residence or take her property. Detective Leal later contacted one of the victim's neighbors who provided him with a description of two individuals that matched the juvenile female and Pena.

Based on the events described above, Pena, who is not a United States citizen,[3] was charged with burglary of a habitation. On June 5, 2015, Pena appeared in the trial court with his attorney, Robb Shepherd, and entered a plea of guilty pursuant to a plea agreement with the State. At the plea hearing the following colloquy took place:

---

[3] Pena is a native of Honduras who came to the United States as a child.

2

Court: Have you discussed with your attorney the fact that since you are not a citizen of the United States, that a plea of guilty in this case is likely to have a negative impact on your immigration status and can cause your deportation?

Pena: Yes, sir.

Court: And despite that fact, you still wish to enter into this plea?

Pena: Yes, sir.

. . . .

Court: Has anybody forced you, threatened you, or coerced you in any way to enter these pleas?

Pena: No, sir.

. . . .

Mr. Shepherd: Okay. The other thing I want to ask you about now is your immigration status. You are not legal to be in this country, are you?

Pena: No.

Mr. Shepherd: And you and I have talked about the fact that your plea here today will result in your deportation if the immigration service ever decides to deport you, you understand that, don't you?

Pena: Yes, sir.

Later, at Pena's sentencing hearing, the trial court repeated these admonishments and the following colloquy took place:

Court: Now, I'm sure that I went over this with you at the time of the plea, but I want to be clear that you do understand that as a result of these pleas that you will be deported. Do you understand that?

Pena: Yes, sir.

3

The trial court then deferred adjudication and placed Pena on eight years' community supervision with 300 hours of community service and ordered him to pay $1,890.78 in restitution.

On March 2, 2016, the United States Department of Homeland Security filed removal proceedings against Pena under the Immigration and Nationality Act. *See* 8 U.S.C. § 1227 (INA). Pena then filed an application for a writ of habeas corpus. *See* Tex. Code Crim. Proc. art. 11.072. In the application Pena asserted that he received ineffective assistance of counsel, making his guilty plea to burglary of a habitation involuntary. Pena asserted his counsel's performance was deficient, in violation of the standard set forth in *Padilla v. Kentucky*, 559 U.S. 356 (2010), because it was not objectively reasonable for his trial counsel to fail to advise him of the risk of deportation and the specific immigration consequences that would result from his guilty plea. Specifically, Pena asserted that because the relevant immigration law was clear and succinct, Shepherd had a duty to consult with an immigration attorney through the Capital Area Private Defender Service (CAPDS)[4] and seek out information regarding the consequences a guilty plea would have on his ability to avoid deportation. Pena asserted that because of his guilty plea, he is ineligible to seek either special immigrant juvenile (SIJ) status, *see* 8 C.F.R. § 204.11, or asylum and withholding of removal, *see* 8 U.S.C. § 1158(b)(2), and is no longer eligible to become a naturalized citizen. Pena also contended that Shepherd could have and should have attempted to negotiate a plea that avoided these immigration consequences.

---

[4] The Capital Area Private Defender Service (CAPDS) was created as a collaboration of the Austin Criminal Defense Lawyers' Association, the Austin Bar Association, and Travis County criminal judges. CAPDS began offering free immigration consultations for attorneys appointed to represent non-citizen clients in April 2015. CAPDS also provides investigative support to attorneys appointed to represent indigent clients.

Pena argued that he was prejudiced by Shepherd's allegedly deficient conduct and would have proceeded to trial rather than accept the plea agreement if he had been informed of the immigration consequences. Pena maintained that Shepherd's conduct affected the outcome of the plea process because he never advised Pena that deferred adjudication was a conviction for immigration purposes, he did not research the consequences of the plea on asylum or SIJ status, he mischaracterized Pena's burglary charge as an aggravated felony, and he allegedly told Pena that if Pena did not enter a guilty plea, Immigration and Customs Enforcement (ICE) would arrest and deport him.

In support of his application, Pena submitted an affidavit in which he averred:

> I would've taken this case to trial if the case didn't get worked out so it wouldn't affect my immigration case. When I did this plea last year in June 2015, I didn't know that I had the special immigrant juvenile type of case available to me. I'm [sic] want the immigration judge to give me asylum too. My criminal lawyer Robb Shepherd didn't communicate with me in the cases in Travis County because he told me to sign the plea as he had it setup back in June 2015 last year or else he would have immigration pick me up next time we went to court. . . . Robb Shepherd didn't tell me that I could've stayed here in the United States if these cases had different please [sic] done with them. Robb Shepherd didn't tell me anything about crimes involving moral turpitude or if the plea could be different.

Pena also stated in his affidavit that he was unaware of the consequences his guilty plea would have on his immigration case until he spoke to his immigration lawyer, Stephanie Taylor. Pena's application was also supported by Taylor's affidavit in which she identified herself as the immigration attorney for CAPDS at the time of Pena's trial court proceedings. Further, Taylor's affidavit described that although Shepherd had contacted CAPDS in other cases, he did not contact CAPDS regarding Pena's cases.

5

The habeas court denied Pena's application for a writ of habeas corpus without conducting a hearing.[5] The court made the following findings of fact and conclusions of law:

> 6. [Pena] claims that his pleas were involuntary and trial counsel was ineffective because trial counsel did not warn [Pena] that his pleas would make him ineligible for potential avenues of relief from deportation (such as withholding from removal, asylum, and SIJ status). [Pena] asks this court to vacate his convictions pursuant to *Padilla*.
>
> 7. *Padilla* did not place a duty on criminal defense attorneys to discuss the effect a plea will have on potential avenues of relief from deportation.
>
> 8. *Padilla* held that criminal defense attorneys warn their clients when deportation is a clear consequence of the plea.
>
> 9. When deportation consequences are unclear, *Padilla* held that criminal defense attorneys need do no more than advise their clients that the criminal charges may carry a risk of adverse immigration consequences.
>
> 10. The record shows that trial counsel complied with his duty under *Padilla*. Trial counsel warned [Pena] that he was pleading to an aggravated felony and that deportation was a consequence of his plea.
>
> 11. The trial court also told [Pena] that he would be deported as a result of his pleas.

Pena then perfected this appeal, in which he argues that the habeas court abused its discretion by denying his application for a writ of habeas corpus.

---

[5] The habeas court is not required to hold a hearing, but is permitted to make its determination by considering affidavits, depositions, interrogatories, or by holding a hearing. *See* Tex. Code Crim. Proc. art. 11.072, § 6(b). The court may also rely on the court's personal recollection. *Id.*; *see Ex parte Karedia*, Nos. 03-11-00831-CR & -00832-CR, 2013 WL 599555, at *3 (Tex. App.—Austin Feb. 15, 2013, pet. ref'd) (mem. op., not designated for publication) (sufficient for habeas court to rely on affidavits, record, and personal knowledge of plea attorney).

## STANDARD OF REVIEW

A denial of habeas corpus relief is reviewed under an abuse of discretion standard. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006); *Hernandez-Prado v. State*, No. 03-15-00290-CR, 2016 WL 3144113, at *4 (Tex. App.—Austin May 26, 2016, no pet.) (mem. op., not designated for publication). A habeas court abuses its discretion, and the appellate court will reverse the habeas court's determination, if it is "arbitrary or unreasonable." *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). A habeas court does not abuse its discretion when its determination is within "the zone of reasonable disagreement." *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008).

When reviewing a habeas court's denial of an application for a writ of habeas corpus, an appellate court must view the facts in the light most favorable to the habeas court's determination and uphold that determination absent an abuse of discretion. *Ex parte Wheeler*, 203 S.W.3d at 324; *Hernandez-Prado*, 2016 WL 3144113, at *4. In habeas proceedings virtually all of the fact findings require a credibility determination, and "'the fact finder is the exclusive judge of the credibility of the witnesses.'" *Hernandez-Prado*, 2016 WL 3144113, at *4 (quoting *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex. Crim. App. 1996)). In a habeas proceeding brought under article 11.072, "the trial court is the sole finder of fact," and an appellate court affords "almost total deference to a trial court's factual findings when supported by the record, especially when those findings are based upon credibility and demeanor." *State v. Ambrose*, 487 S.W.3d 587, 596 (Tex. Crim. App. 2016); *Ex parte Ali*, 368 S.W.3d 827, 830 (Tex. App.—Austin 2012, pet. ref'd); *see also Ex parte Mowbray*, 943 S.W.2d at 465 (recognizing there is less potential for disregarding trial court's

findings in article 11.072 appeal than in article 11.07 appeal where Court of Criminal Appeals is sole fact finder). "'When the trial court's findings of fact in a habeas corpus proceeding are supported by the record, they should be accepted by the reviewing court.'" *Ex parte Karedia*, Nos. 03-11-00831-CR & -00832-CR, 2013 WL 599555, at \*3 (Tex. App.—Austin Feb. 15, 2013, pet. ref'd) (mem. op., not designated for publication) (quoting *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006)). "Moreover, a reviewing court will defer to the factual findings of the trial judge even when the evidence is submitted by affidavit." *Ex parte Thompson*, 153 S.W.3d 416, 425 (Tex. Crim. App. 2005).

## DISCUSSION

**Ineffective Assistance of Counsel**

The validity of a guilty plea is determined by "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *see Ex parte Karedia*, 2013 WL 599555, at \*5. "A guilty plea is not knowing or voluntary if made as a result of ineffective assistance of counsel." *Ex parte Moussazadeh*, 361 S.W.3d 684, 689 (Tex. Crim. App. 2012). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Ex parte Karedia*, 2013 WL 599555, at \*5 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

The two-part *Strickland* test is applied when the challenge to the guilty plea is based on ineffective assistance of counsel. *See, e.g.*, *Hill v. Lockhart*, 474 U.S. 52, 58 (1985);

8

*Strickland v. Washington*, 466 U.S. 668, 687-94 (1984); *Ex parte Karedia*, 2013 WL 599555, at *6. To prevail on a writ of habeas corpus, an applicant must establish that (1) counsel's performance was deficient and (2) counsel's deficient performance caused the applicant prejudice. *Ex parte Chandler*, 182 S.W.3d 350, 353 (Tex. Crim. App. 2005) (citing *Strickland*, 466 U.S. at 694); *Ex parte Karedia*, 2013 WL 599555, at *6. An applicant must prove both prongs of the *Strickland* test by a preponderance of the evidence. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010); *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002); *Ex parte Torres*, No. 03-14-00169-CR, 2015 WL 2066232, at *4 (Tex. App.—Austin Apr. 29, 2015, no pet.) (mem. op., not designated for publication). Failure by the applicant to establish either deficient performance or prejudice defeats the claim of ineffectiveness of counsel. *Perez*, 310 S.W.3d at 893.

To establish that counsel's performance was deficient, an applicant must show counsel's advice "fell below an objective standard of reasonableness." *See Strickland*, 466 U.S. at 687-88; *see also Ex parte Karedia*, 2013 WL 599555, at *6 (recognizing that first half of *Strickland* test applies in context of guilty pleas as in other contexts but that prejudice requirement is analyzed differently). "In *Padilla*, the Supreme Court expanded the scope of the Sixth Amendment to hold that it requires an attorney for a non-citizen criminal defendant to provide advice about the risk of deportation arising from a guilty plea." *Ex parte Torres*, 483 S.W.3d 35, 43 (Tex. Crim. App. 2016). The weight of prevailing professional norms supports the view that counsel must advise his client regarding the risk of deportation, but the extent of the advice required depends on the terms of the relevant statute. *Padilla*, 559 U.S. at 367. When, as Pena contends is the case here, "the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal

9

consequence" of a conviction, i.e., when the "deportation consequence is truly clear," counsel's advice must be "equally clear." *Id.* at 369; *Ex parte Torres*, 2015 WL 2066232, at *5; *Ex parte Ali*, 368 S.W.3d at 834. Conversely, "when the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a non-citizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Padilla*, 559 U.S. at 369.

Failure to meet the standard set forth in *Padilla* may render counsel's performance deficient. *See Ex parte Torres*, 483 S.W.3d at 44-46. However, the applicant must also establish prejudice by "convincing the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 371. When, as here, the prejudice prong of the *Strickland* test is dispositive, we will address only that prong on appeal. *Ex parte Ali*, 368 S.W.3d at 835. Because, as discussed below, Pena failed to establish that he was prejudiced by his counsel's allegedly deficient performance, we conclude that the habeas court did not abuse its discretion by denying Pena's application.

**Prejudice**

"The focus of the prejudice inquiry is 'on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.'" *Ex parte Karedia*, 2013 WL 599555, at *6 (quoting *Hill*, 474 U.S. at 59). To establish prejudice, an applicant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *See Padilla*, 559 U.S. at 372; *see also Ex parte Torres*, 2015 WL 2066232, at *5 (recognizing that prejudice test is objective and turns on what reasonable person in defendant's shoes would do). The Texas Court of Criminal Appeals has explained the prejudice inquiry in plea cases as follows:

> In the ineffective assistance of counsel context, the narrowed prejudice inquiry is designed to ensure that the defendant would actually have availed himself of the proceeding in question, so that he really is in the same position as someone whose rights were denied by the trial court: counsel's deficient performance must actually cause the forfeiture [of the proceeding in question]. If the defendant cannot demonstrate that but for counsel's deficient performance, he would have [availed himself of that proceeding], counsel's deficient performance has not deprived him of anything, and he is not entitled to relief.

*Johnson v. State*, 169 S.W.3d 223, 231-32 (Tex. Crim. App. 2005). An applicant must show that there is a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty but would have insisted on going to trial. *See, e.g.*, *Strickland*, 466 U.S. at 687-88, 694; *Perez*, 310 S.W.3d at 892-93; *Ex parte Torres*, 2015 WL 2066232, at *5. The court is to consider "the circumstances surrounding the plea and the gravity of the misrepresentation" to determine whether there is a reasonable probability an applicant would not have pleaded guilty. *Ex parte Ali*, 368 S.W.3d at 835. Factors to consider include the evidence supporting an applicant's assertions, the likelihood of success at trial, the risks the applicant would have faced at trial, and the benefits received from the plea bargain. *Ex parte Riley*, No. 03-16-00350-CR, 2016 WL 6068254, at *6 (Tex. App.—Austin Oct. 11, 2016, pet. ref'd) (mem. op., not designated for publication). When defendant placed particular emphasis on certain consequences of a plea when deciding whether or not to accept it, that may constitute a circumstance that weighs in favor of a finding of prejudice. *Id.* However, "even when a defendant wholly relies upon erroneous advice of counsel, the magnitude of the error as it concerns the consequences of the plea is a relevant factor; not every reliance on erroneous advice is sufficient to justify rendering the plea vulnerable to collateral attack." *Ex parte Moody*, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999); *see Ex parte Torres*, 2015 WL 2066232, at *5.

11

We must determine whether Pena demonstrated by a preponderance of the evidence that there is a reasonable probability that, but for his counsel's errors, if any, he would not have pleaded guilty but rather would have proceeded to trial. *See Ex parte Torres*, 2015 WL 2066232, at *6; *Ex parte Ali*, 368 S.W.3d at 835. In view of the totality of the circumstances, and deferring to the habeas court's factual findings, we conclude that Pena has failed to demonstrate that, but for his counsel's failure to provide him with adequate advice regarding the risk of deportation and the potential immigration consequences, assuming counsel failed to do so, Pena would have rejected the plea agreement and proceeded to trial.

**Evidence Supporting Pena's Assertions**

The only evidence Pena presented to support his assertion that he would have insisted on going to trial are statements in his affidavit to that effect. Pena asserted, for example, that his counsel told him to plead guilty or else ICE would arrest and deport him. However, the habeas court would not have abused its discretion in disbelieving these statements. *See Ex parte Ali*, 368 S.W.3d at 840-41; *see also Shanklin v. State*, 190 S.W.3d 154, 167 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd, improvidently granted) ("The trial court is not required to believe actual statements contained within an affidavit, even when they are uncontradicted by other affidavits."); *Dusenberry v. State*, 915 S.W.2d 947, 949 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) ("The court may consider the interest and bias of any witness and is not required to accept as true the testimony of the accused or any defense witness simply because it was uncontradicted."). We defer, as we should, to the habeas court's credibility determination in rejecting Pena's assertions. *See Ex parte Riley*, 2016 WL 6068254, at *4 (deferring to trial court's findings and finding no support for assertion on

appeal that counsel told defendant he would face felony charges if he did not accept plea); *Ex parte Ali*, 368 S.W.3d at 840-41. Moreover, Pena expressly testified at his plea hearing that no one had forced, threatened, or coerced him to enter his plea.

The habeas court's determination that relief should be denied is supported by the trial court's admonishments during Pena's plea hearing and again at his sentencing hearing when the court expressly told Pena he would be deported as a result of his plea. *See Ex parte Torres*, 483 S.W.3d at 50. Based on these facts, the record supports a conclusion that Pena did not place any special emphasis on avoiding immigration consequences or deportation as a result of his plea. *See id.* To the contrary, the record supports the conclusion that, had Pena been advised of the specific potential immigration consequences of his plea, as opposed to the advice he received regarding the likelihood of a negative impact on his immigration status and possible deportation, the specific advice would not have been the tipping point that would have caused Pena to reject the plea agreement and proceed to trial. *See id.*[6]

**Likelihood of Success at Trial**

The facts of this case, as summarized above, provide overwhelming evidence of Pena's guilt. *See Ex parte Ali*, 368 S.W.3d at 840. The patrol officers found Pena inside the stolen vehicle with additional stolen property, and Detective Leal obtained a description from the burglary victim's neighbor matching that of Pena. *See id.* (video and audio recordings were considered to

---

[6] Pena has not presented any evidence regarding his family or that his, or their, primary concern was Pena's ability to remain in the United States. *Cf. Ex parte Torres*, 483 S.W.3d 35, 50 (Tex. Crim. App. 2016) (mentioning defendant had "strong ties" to this country and that defendant's family's primary concern was getting defendant out of jail).

13

be "very strong" and "overwhelming" evidence of guilt). A review of the record reveals that Pena did not at any point maintain that he was innocent, and there was no evidence of any factual or legal defenses that Pena could have advanced at trial to avoid conviction. *See Ex parte Torres*, 2015 WL 2066232, at \*6. Thus, the likelihood of a conviction for burglary of a habitation after trial was high, meaning Pena was unlikely to succeed at trial. *Cf. Ex parte Riley*, 2016 WL 6068254, at \*6 (finding high likelihood of conviction for assault family violence after trial where defendant admitted to physical contact with wife); *Ex parte Torres*, 2015 WL 2066232, at \*6 (finding decision to reject plea agreement not rational under circumstances where defendant lacked evidence of any factual or legal defenses and lacked evidence of any other plea deal that would have helped him avoid deportation). This factor weighs against a finding of prejudice. *See, e.g.*, *Ex parte Torres*, 2015 WL 2066232, at \*7; *Flores-Alonzo v. State*, 460 S.W.3d 197, 206 (Tex. App.—Texarkana 2015, no pet.).

**Plea Agreement Compared to Penalties Risked at Trial**

If Pena had not entered into the plea agreement with the State but had proceeded to trial and been convicted, he would have risked deportation and the same immigration consequences and could have additionally been sentenced to up to twenty years of actual jail time.[7] *See Ex parte Ali*, 368 S.W.3d at 840. By taking the plea and agreeing to deferred adjudication community supervision, Pena was able to avoid significant jail time as well as dispose of his three charges for

---

[7] The punishment range for burglary of a habitation, a second degree felony, is a term of not more than 20 or less than two years' confinement in the Texas Department of Criminal Justice and, in addition, a fine not to exceed $10,000. *See* Tex. Penal Code §§ 12.33, 30.02.

14

unauthorized use of a motor vehicle. There was no evidence of any available plea arrangement that would have avoided adverse immigration consequences to Pena. *See Ex parte Torres*, 483 S.W.3d at 50. A rational non-citizen defendant in these circumstances would likely not risk a trial because it would result in near-certain conviction with severe criminal penalties in addition to the same immigration consequences of pleading guilty. *See Ex parte Torres*, 2015 WL 2066232, at *7. In light of this and other evidence, the habeas court could have reasonably concluded that it would not have been rational under the circumstances for Pena to reject a favorable plea agreement and proceed to trial. *See Ex parte Riley*, 2016 WL 6068254, at *6; *Ex parte Ali*, 368 S.W.3d at 840; *see also Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012) (considering overwhelming evidence of guilt in concluding that no reasonable person in defendant's shoes would have proceeded to trial).

Viewing the evidence in the light most favorable to the habeas court's ruling, and deferring to the habeas court's credibility determinations as we should, we conclude that the habeas court did not abuse its discretion in denying Pena's habeas application. *See Ex parte Torres*, 483 S.W.3d at 51. Accordingly, we overrule Pena's sole issue on appeal.

## CONCLUSION

Having concluded that the habeas court did not abuse its discretion in denying Pena's application for a writ of habeas corpus, we affirm the order denying the application for a writ of habeas corpus.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Field and Bourland

Affirmed

Filed:   July 28, 2017

Do Not Publish